## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

_____
:
CARSON OPTICAL, INC.                                        :
:
:
            Plaintiffs,            :        Civil Action No.:
                                   :        2:15-cv-03793-KAM-SIL
       v.                          :
                                   :
EBAY INC.                          :
                                   :
            Defendants.            :        AUGUST 14, 2015
_____

## AMENDED COMPLAINT

The plaintiff, Carson Optical, Inc., hereby files its Amended Complaint against the

defendant, eBay Inc., as follows:

## THE PARTIES

1.       The plaintiff, Carson Optical, Inc. ("Carson") is, and at all relevant times, has

been, a corporation organized and existing under the laws of the State of New York and

maintains its principal place of business in Ronkonkoma, New York.

2.       Carson markets and sells optical products throughout the country including within

this Judicial District.

3.       The defendant, eBay Inc. ("eBay"), is, and at all relevant times, has been, a

corporation organized and existing under the laws of the State of Delaware and maintains its

principal place of business in San Jose, California.

4.       eBay is registered to do business in the State of New York, continuously and

extensively does business in this Judicial District, and specifically engages in acts that

encourage, aid and abet the offering for sale and sale of infringing products within this Judicial District.

## JURISDICTION AND VENUE

5.    This is an action for violation of the Patent Laws of the United States of America, 35 U.S.C. § 1, et al., and the common law.

6.    The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

7.    Venue is proper within this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## THE PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

8.    On September 12, 2000, the United States Patent and Trademark Office issued U.S. Patent No. 6,116,729 ("the 729 Patent").  A copy of the 729 Patent is attached hereto as Exhibit A.

9.    On April 10, 2001, the United States Patent and Trademark Office issued U.S. Patent No. 6,215,601 B1 ("the 601 Patent").  A copy of the 601 Patent is attached hereto as Exhibit B.

10.    Since on or about September 27, 2011, Carson has been the owner by assignment of the 729 Patent and the 601 Patent.

11.    The inventions claimed by the 729 Patent and the 601 Patent are embodied in Carson's commercial product that bears the trademark MagniVisor Deluxe.  An exemplar of the MagniVisor Deluxe is attached hereto as Exhibit C.

12.     The MagniVisor Deluxe has been well received by the consuming public, and it has become a commercial success, leading to rampant illegal copying by Chinese manufactures of the claimed inventions.

13.     The legal right to exclusively market and sell products claimed by the 729 Patent and the 601 Patent in the United States for only a limited time period is, therefore, a valuable asset wholly owned by Carson.

## EBAY AND ITS OPERATIONS

14.     EBay is an American e-commerce company, which is traded on the NASDAQ stock exchange.

15.     According to eBay, it is a "global commerce platform" that "empowers consumers to buy and sell anything, anytime, anywhere" and "enables individuals and business to buy and sell online."

16.     EBay owns and operates the website, www.ebay.com.

17.     EBay reports that it is one of the world's largest online marketplaces, where practically anyone can buy and sell practically anything.

18.      EBay reportedly "connects a diverse and passionate community of individual buyers and sellers, as well as small businesses. Their collective impact on ecommerce is staggering, and approximately 800 million items are listed on eBay."

19.     In 2014, eBay's annual revenue exceeded $17.9 Billion, its total assets exceeded $45 Billion, and its total equity exceeded $19 Billion.

20.     EBay generates revenue through a complex system of fees for services, listing product features, and a Final Value Fee for sales proceeds received by sellers.

21.     For example, eBay charges an Insertion Fee based on the opening or reserve price of auction-style listings and a Final Value Fee, which is determined by a percentage of the total amount of the sale (item price plus shipping charges).  Likewise, eBay charges an Insertion Fee for fixed-price listings and a Final Value Fee, which varies based on category and total sale amount.  EBay vendors also have the option of purchasing, at additional cost, certain features in an effort to differentiate their listings, such as a border or bold-faced type.  EBay also generates revenue through encouraging the use of PayPal, a wholly owned subsidiary of eBay, to consummate eBay transactions.  Moreover, despite a proposed separation of PayPal from eBay, eBay has nonetheless reportedly agreed to ensure that roughly 80% of its gross merchandise sales are routed through PayPal for the next five years, as they are today.  EBay thus has and will continued to have a financial incentive to facilitate on its website the sale of as many items as possible, including items that infringe valid and enforceable U.S. Patent rights of others.

22.     In an effort to maximize sales on www.ebay.com and its profits, eBay provides a marketplace for vendors to market and sell products and further actively encourages and assists those vendors in securing sales, including infringing ones, in numerous ways.

23.     EBay, for example, provides vendors with "tips and tools" they need to sell items to "a worldwide market."  EBay's tips and tools are designed to assist vendors in "successful selling" and "selling with improved results."

24.     EBay also provides vendors with tutorials and classes, which include (i) visiting eBay's "Seller Center" to watch videos and demos that are designed specifically to "help" vendor's "sell;" and (ii) attending "eBay University" that provides vendors with "tips on how to take your business to the next level."

25.   EBay further offers vendors with email marketing tools, which include creating and managing mailing lists, designing email newsletters, and attracting more subscribers.

26.   EBay also facilitates and encourages vendors to open "eBay Stores" that, according to eBay, (i) results in an average of 25% increase in total sales within three months of the store's opening, (ii) generates more regular customers, (iii) makes the on-line vendor look more professional, (iv) affords special features such longer listing periods and automatic re-listing, (v) provides a unique URL that can be specially promoted and picked up search engines thereby increasing traffic, (vi) includes a search box specially for the eBay Store, and (vii) generates free monthly sales reports that recap sales activity by category.

27.   EBay additionally seeks to maximize sales and profits by granting special treatment to vendors who meet particular sales and tracking requirements.  For example, eBay grants "Top Rated," "Top Rated Plus" and "PowerSeller" status to vendors who meet sales and tracking performance standards, regardless of whether the sales or shipments are infringing valid and enforceable U.S. Patents.

28.   EBay further employs highly sophisticated e-advertising techniques to assist, facilitate and maximize vendors' sales, including infringing ones, and eBay's profits.

29.   For example only, eBay assists vendors by employing "retargeting" advertising, which tracks people who might be interested in buying a particular product, drops an "anonymous cookie" on that person's browser, later detects the cookie when the person is on-line again, and custom targets an ad to promote purchase of the product.

30.   EBay additionally allows vendors to integrate with social media sites, such as FaceBook, so that a vendor who is selling, for example, an infringing product can add "Want" or "Own" buttons to product's listing on the vendor's News Feed.  Friends can then share if they

"want" to buy the product in the future, or if they own the product, whether they recommend it to friends.  Such News Feeds are designed to direct traffic back to eBay, thereby boosting sales and eBay profits.

31.     EBay also facilitates a vendor's ability to ship products, including infringing ones. For example, eBay allows vendors to create and print "eBay" shipping labels, prepay for postage, obtain special eBay discounts from USPS, UPS and FedEx, estimate shipping costs, receive tracking and delivery confirmation, automatically share tracking information with buyers, and facilitate international shipping (including from China).

32.     Finally, eBay provides vendors with techniques and means to ensure that vendors receive payment for eBay sold items, which include using the eBay shopping cart and/or PayPal.

## EBAY'S VERIFIED RIGHTS OWNER PROGRAM

33.     EBay falsely holds itself out as a company that respects the intellectual property of others, and misleadingly claims that it is "committed to helping protect the intellectual property rights" of others.

34.     In this regard, eBay has publicly proclaimed: "We're committed to protecting the intellectual property rights of third parties … We created the Verified Rights Owner (VeRO) Program so that intellectual property owners can easily report listings that infringe their rights."

35.     EBay further proclaims: "We don't allow replicas, counterfeit items, or unauthorized copies to be listed on eBay."

36.     Based upon and in reliance on eBay's stated policy, Carson – on a number of occasions – provided written notice to eBay of (i) the 729 Patent, (ii) the 601 Patent, and (iii) numerous infringements of these U.S. Patents on www.ebay.com.

37.     Carson also followed eBay's VeRO procedures and provided notice to eBay of infringement of Carson's U.S. Patents by submitting online complaint forms, entitled "Notice of Claimed Infringement."

38.     As a result, eBay knows of Carson's 729 and 601 Patents and knows of infringing sales and vendors who are infringing Carson's 729 and/or 601 Patents.

39.     Despite the above, eBay has refused to remove the infringing listings but instead has continued to knowingly urge, aid, abet, encourage, and actively induce others to infringe one or more claims of Carson's 729 and 601 Patents in violation of 35 U.S.C. § 271(b), all to eBay's economic benefit and Carson's economic detriment.

40.     At a minimum, eBay is knowingly inducing infringement because it is a willfully blind defendant who has taken deliberate actions to avoid confirming a high probability of wrongdoing known to it in view of Carson's numerous detailed notifications.

41.     In particular, eBay is willfully blind because (1) it has explicitly stated that it will alter its wrongful behavior only if Carson obtains a court order or ITC 337 order against an infringing seller or product; (2) it has explicitly stated it will not even evaluate the issues of patent infringement presented by Carson, despite the fact that it is a sophisticated company with means to hire capable patent counsel; (3) eBay instead hired a lawyer, Ian C. Ballon, who is a self-proclaimed "intellectual property and Internet litigator" who explicitly refused to evaluate the issues of patent infringement presented by Carson; and (4) eBay's counsel attempted to justify eBay's refusal to evaluate the issues of patent infringement presented by Carson or alter its wrongful behavior by falsely suggesting (i) evaluating patent infringement is too complex; (ii) eBay does not (and cannot) have the knowledge and expertise required to interpret and construe the claims of Carson's 729 and 601 Patents; (iii) eBay is not and cannot be in a position to

compare the accused products to the patent claims; and (iv) the law does not and/or cannot impose legal responsibility on eBay for induced infringement.

## COUNT ONE (INDUCED INFRINGEMENT OF THE 729 PATENT)

42.     Paragraphs 1 through 41 are hereby incorporated by reference as if fully set forth herein.

43.     Based on the foregoing, eBay has actively induced infringement of the 729 Patent in violation of 35 U.S.C. § 271(b) and, therefore, by statute, "shall be liable as an infringer."

43.     Since at least February 7, 2014, eBay has been on notice that (i) Carson was the owner of the 729 Patent, and (ii) numerous products, which are offered for sale and sold on www.ebay.com, infringe one or more claims of the 729 Patent.

44.     The 729 Patent is directed to a head magnifying glass, and includes nine claims. Claim one, for example, claims a head magnifying glass that comprises four elements: a fixer, a magnifying plate, a pivoting seat, and an illuminating body, each with certain features, and each of these elements is found in the accused products.

45.     Despite this, numerous entities with eBay's knowledge and active assistance, and to eBay's economic benefit, continue to import, offer for sale, and/or sell products on www.ebay.com that directly infringe one or more of the claims of the 729 Patent.

46.     The infringing products include: 331204849031, 321746187587, 251929494183, 181269633420, 291265447371, 161700917377, 181736707677, 360312822590, 360863830066, 361292204143, 331547146602, 141249539322, 140948125493, 400665608864, 380425308469, 221752387966, 141120815634, 251138824575, 181256927469, 321300858675, and/or 201311379450.

47.   For example, listing number 321746187587 includes the following photographs

of the product to be sold on eBay's website:







48.     By way of comparison, Figure 3 of the 729 Patent is:



49.     Claim 1 of the 729 patent relates to "a head magnifying glass comprising" the following four elements.

50.     The first element is "a fixer with an upper surface and a bottom surface, the fixer having more than one clamps on the bottom surface thereof." The fixer with an upper surface and a bottom surface with two clamps on the bottom surface for listing number 321746187587 is shown above with reference numerals 1, with arrows to the two clamps on the bottom surface.

52.     The second element is "a magnifying plate having tenons stretching out from top portion of the magnifying plate for engaging with the clamps so as to connect the magnifying plate to the fixer." The tenions stretching out from the top portion of the magnifying plate for engaging the claims to connect the plate to the fixer are shown above with reference numerals 2.

53.     The third element is "a pivoting seat on the upper surface of the fixer." The pivoting seat on the upper surface of the fixer is shown above with reference numeral 3.

54.     The fourth and final element is "an illuminating body connected to the pivoting seat in such a way that the illuminating body is able to rotate around a first axis." The illuminating body connected to the pivoting seat in such a way that the body is able to rotate around at least one axis is shown above with reference number 4, with the axis of rotation shown by a double-headed arrow.

55.     Thus, listing number 321746187587 clearly infringes the 729 Patent, and eBay is aware of or willfully blind to such infringement.

56.     By way of yet another example, listing number 291265447371 includes the following photographs of the product to be sold on eBay's website:







57.     The foregoing photographs of listing number 291265447371 are labeled in the same way as the photographs of listing number 321746187587 to show its infringement of the 729 Patent.

58.     Thus, listing number 291265447371 clearly infringes the 729 Patent, and eBay is aware of or willfully blind to such infringement.

59.     The eBay listings of the other listing numbers given above as infringing the 729 Patent are substantively identical in that eBay can easily determine that they infringe the 729 Patent by simply looking at eBay's own listing website.   Thus, eBay is aware of or willfully blind to the infringement of all of the foregoing listing numbers.

47.     eBay has actively induced the infringing sales of the 729 Patent, by one or more of the following acts:

a.     Knowingly allowing infringing vendors to utilize www.ebay.com to offer to sell and sell infringing products, with recognition that eBay's website is (i) a "global commerce platform" that (ii) "empowers consumers to buy and sell anything, anytime, anywhere" and (iii) "enables individuals and business to buy and sell online."

b.     Knowingly allowing infringing vendors to utilize www.ebay.com to offer to sell and sell infringing products, which allows each vendor to build brand recognition, which thereby encourages, aids, abets and/or incudes infringing sales;

c.     Knowingly allowing infringing vendors to benefit from the eBay brand by selling on www.ebay.com, which thereby encourages, aids, abets and/or incudes infringing sales;

d.     Knowingly allowing infringing vendors to benefit from associating themselves with eBay, which is perceived to be a reputable company, thereby encouraging, aiding, abetting and/or inducing infringing sales;

e.     Knowingly providing infringing vendors with "tips and tools" to sell infringing products to a worldwide market;

f.      Knowingly providing infringing vendors with "tips and tools" to sell infringing products with greater success and improved results;

g.      Knowingly providing infringing vendors with a "Seller Center" to help them sell infringing goods;

h.      Knowingly providing infringing vendors with access to "eBay University" to help them sell infringing goods;

i.      Knowingly providing infringing vendors with email marketing tools to facilitate selling infringing goods;

j.      Knowingly providing infringing vendors with the numerous benefits associated with "eBay Stores" and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

k.      Knowingly providing infringing vendors with the special status of "Top Rated," "Top Rated Plus" and "PowerSeller" and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

l.      Knowingly providing infringing vendors with the numerous benefits associated with the status of "Top Rated," "Top Rated Plus" and "PowerSeller" and, thereby, encouraging, aiding, abetting, and/or inducing infringing sales;

m.      Knowingly providing infringing vendors with the advantages associated with eBay's sophisticated e-advertising techniques, such as "retargeting," and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

n.      Knowingly providing infringing vendors with the ability to integrate with social media sites like FaceBook, and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

o.      Knowingly facilitating a vendor's ability to ship infringing products, and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

p.      Knowingly creating and maintaining but refusing to honor a published policy of respecting the intellectual property of others, suggesting the products sold on www.ebay.com are not infringing the patent rights of others, and thereby, encouraging, aiding, abetting and/or inducing infringing sales;

q.     Knowingly refusing to remove or cancel listings of infringing products and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

r.     Knowingly refusing to suspend the selling privileges of infringing vendors and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

s.     Knowingly refusing to remove the selling privileges of infringing vendors and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

t.     Knowingly refusing to even evaluate whether the listings of infringing products are inappropriate under its own published policies and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

u.     Creating and maintaining but not honoring a policy of being "committed to protecting the intellectual property rights of third parties," which suggests to the buying public that the products sold on www.ebay.com are not infringing the patent rights of others, and thereby, encouraging, aiding, abetting and/or inducing infringing sales;

v.     Creating and maintaining but not honoring a policy of not allowing replicas, counterfeit items, and/or unauthorized copies to be listed on eBay which suggests to the buying public that the products sold on www.ebay.com are not infringing the patent rights of others, and, thereby, encouraging, aiding and abetting the infringing sales;

w.     Knowingly refusing to even evaluate Carson's notices and complaints of patent infringement and, thereby, encouraging, aiding and abetting the infringing sales;

x.     Knowingly failing to "help[] protect the intellectual property rights" of Carson in accordance with its published policy and, thereby, encouraging, aiding and abetting the infringing sales;

y.     Knowingly promoting the sale of infringing products because that is in its economic interests, while misleading the buying public into believing eBay would not tolerate the sale of infringing goods on its website;

z.     Knowingly providing to infringing vendors techniques and means to ensure that they receive payment for selling infringing goods on the eBay website; and/or

aa.     Being willfully blind to the foregoing conduct and infringements.

48.     As a result of this infringing activity, Carson is entitled to an award of damages against eBay together with interest and costs in accordance with 35 U.S.C. § 284.

49.     Because eBay's infringement was willful, Carson is entitled to an award of increased damages pursuant to 35 U.S.C. § 284.

50.     This case is exceptional under 35 U.S.C. § 285, entitling Carson to the recovery of reasonable attorneys' fees and costs in pursuing this matter to judgment.

## COUNT TWO (INDUCED INFRINGEMENT OF THE 601 PATENT)

51.     Paragraphs 1 through 50 are hereby incorporated by reference as if fully set forth herein.

52.     EBay has also actively induced infringement of the 601 Patent in violation of 35 U.S.C. § 271(b) and, therefore, by statute, "shall be liable as an infringer."

53.     Since at least February 7, 2014, eBay has been on notice that (i) Carson was the owner of the 601 Patent, and (ii) numerous products, which are offered for sale and sold on www.ebay.com, infringe one or more claims of the 601 Patent.

54.      The 601 Patent is directed to a head belt for a head magnifying glass. Claim one, for example, claims a head belt that comprises four elements: a first head belt, a second head belt, only one buttoning seat, and a movable plate, each with certain features, and each of these elements is found in the accused products.

55.     Despite this, numerous entities with eBay's knowledge and acquiescence, and to eBay's economic benefit, continue to import, offer for sale, and/or sell products on www.ebay.com that directly infringe one or more of the claims of the 601 Patent.

56.     The infringing products include those identified in Count One, plus:

380849185791, 361287235511, 381028621749, 310971581831, 131390509206, 271645836517, 360853131036, 400888905307, 311235553428, 380937900259, 121643192453, 251836414990, 331455803224, 311359796833, 271871166416, 281693311433, 131458843433, 330868159626, 400922396681, 261776278335, 351206374764, 400922419916, 131515946089, 380635095634, 271411019084, 331488545623, 150839923376, 321489782444, 301583123113, 131390510747, 361292637285, 381262429134, 191527015537, 281696105943, 391147542044, 311344302381, 301624995131, 181614253347, 111555845421, 360621399037, 271645836759, 301633943023, 271874035310, 360761748871, 351253475294, 131330546361, 291448809708, 311357425851, 151634734969, 171390284379, 311177692032, 151228355447, 391081455351, 300990533634, 281216504526, 121349620908, 270757452817, 201340765719, 381235819776, 351387464441, 321532212092, 331287765481, 191388536920, 231546930000, 290940782909, 171707152216, 161252710553, 201323265974, 141201650084, 271672697202, 311330401460, 271837449416, 400730224474, 391089247617, 191383705578, 331472620787, 181183010254, 360584265404, 301565684615, 181730281676, 201311533545, 291155335927, 200729796001, 281670156557, 181525660754, 141669125800, 320813568623, 380710596268, 140967797145, 111660129734, 261096368148, 180972935230, 371290657212, 191583917245, 111596537560, and/or 251633472267.

57.     Again, for example, listing number 321746187587 includes the following photographs of the product to be sold on eBay's website:





58.     By reference, Figure 2 of the 601 Patent is as follows:



Fig. 2

58.     Claim 4 of the 601 Patent relates to a "head belt for a head magnifying glass, wherein the head magnifying glass has a fixer with a first end and a second end, the head belt comprising" the following five elements.  The fixer with two ends for listing number 321746187587 was identified above with reference to the 729 Patent.

59.     The first and second elements are "a first head belt coupled to the first end of the fixer" and "a second head belt coupled to the second end of the fixer, wherein more than one vertical buttoning holes are formed on the first head belt."  The first and second head belts coupled to opposite ends of the fixer are shown above with reference numerals 1.  At least one buttoning hole is shown with an arrow.

60.     The third element is "only one buttoning seat coupled to the second head belt and forming a vacancy between the buttoning seat and the second head belt, wherein a through hole is formed in the buttoning seat." The buttoning seat on the second belt with a vacancy into which the first belt slips is shown above with reference numeral 2.  The through hole is shown with an arrow.

61.     The fourth element is "a movable plate pivotally coupled to the buttoning seat, wherein a clamping key is set up at one end of the movable plate for engaging with the through hole of the buttoning seat, and a spring plate is established at the other end of the movable plate." The movable plate pivotally coupled to the buttoning seat is shown above with reference numeral 3.  The clamping key and spring plate as claimed are shown with arrows.

62.     The fifth and final element is "wherein the first belt and the second, head belt are pivotally connected to the first end and the second end of the fixer of the head magnifying glass, respectively."  The pivotal connection between the belts and the fixer are shown above with reference numeral 4.

63.     Thus, listing number 321746187587 clearly infringes the 601 Patent, and eBay is aware of or willfully blind to such infringement.

64.     Listing number 151228355447 is an example of an eBay listing that infringes the 601 Patent but not the 729 Patent.  Photographs of listing number 151228355447 from eBay's website are shown below.





57.     The foregoing photographs of listing number 151228355447 are labeled in the same way as the photographs of listing number 321746187587 to show its infringement of the 601 Patent.

58.     Thus, listing number 151228355447 clearly infringes the 601 Patent, and eBay is aware of or willfully blind to such infringement.

59.     The eBay listings of the other listing numbers given above as infringing the 601 Patent are substantively identical in that eBay can easily determine that they infringe the 601

Patent by simply looking at eBay's own listing website.   Thus, eBay is aware of or willfully blind to the infringement of all of the foregoing listing numbers.

57.     EBay has actively induced the infringing sales of the 601 Patent, by one or more of the following acts:

a.      Knowingly allowing infringing vendors to utilize www.ebay.com to offer to sell and sell infringing products, with recognition that eBay's website is (i) a "global commerce platform" that (ii) "empowers consumers to buy and sell anything, anytime, anywhere" and (iii) "enables individuals and business to buy and sell online."

b.      Knowingly allowing infringing vendors to utilize www.ebay.com to offer to sell and sell infringing products, which allows each vendor to build brand recognition, which thereby encourages, aids, abets and/or incudes infringing sales;

c.      Knowingly allowing infringing vendors to benefit from the eBay brand by selling on www.ebay.com, which thereby encourages, aids, abets and/or incudes infringing sales;

d.      Knowingly allowing infringing vendors to benefit from associating themselves with eBay, which is perceived to be a reputable company, thereby encouraging, aiding, abetting and/or inducing infringing sales;

e.      Knowingly providing infringing vendors with "tips and tools" to sell infringing products to a worldwide market;

f.      Knowingly providing infringing vendors with "tips and tools" to sell infringing products with greater success and improved results;

g.      Knowingly providing infringing vendors with a "Seller Center" to help them sell infringing goods;

h.      Knowingly providing infringing vendors with access to "eBay University" to help them sell infringing goods;

i.      Knowingly providing infringing vendors with email marketing tools to facilitate selling infringing goods;

j.      Knowingly providing infringing vendors with the numerous benefits associated with "eBay Stores" and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

k.      Knowingly providing infringing vendors with the special status of "Top Rated," "Top Rated Plus" and "PowerSeller" and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

l.      Knowingly providing infringing vendors with the numerous benefits associated with the status of "Top Rated," "Top Rated Plus" and "PowerSeller" and, thereby, encouraging, aiding, abetting, and/or inducing infringing sales;

m.      Knowingly providing infringing vendors with the advantages associated with eBay's sophisticated e-advertising techniques, such as "retargeting," and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

n.      Knowingly providing infringing vendors with the ability to integrate with social media sites like FaceBook, and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

o.      Knowingly facilitating a vendor's ability to ship infringing products, and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

p.      Knowingly creating and maintaining but refusing to honor a published policy of respecting the intellectual property of others, suggesting the products sold on www.ebay.com are not infringing the patent rights of others, and thereby, encouraging, aiding, abetting and/or inducing infringing sales;

q.      Knowingly refusing to remove or cancel listings of infringing products and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

r.      Knowingly refusing to suspend the selling privileges of infringing vendors and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

s.      Knowingly refusing to remove the selling privileges of infringing vendors and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

t.      Knowingly refusing to even evaluate whether the listings of infringing products are inappropriate under its own published

policies and, thereby, encouraging, aiding, abetting and/or inducing infringing sales;

u.     Creating and maintaining but not honoring a policy of being "committed to protecting the intellectual property rights of third parties," which suggests to the buying public that the products sold on www.ebay.com are not infringing the patent rights of others, and thereby, encouraging, aiding, abetting and/or inducing infringing sales;

v.     Creating and maintaining but not honoring a policy of not allowing replicas, counterfeit items, and/or unauthorized copies to be listed on eBay which suggests to the buying public that the products sold on www.ebay.com are not infringing the patent rights of others, and, thereby, encouraging, aiding and abetting the infringing sales;

w.     Knowingly refusing to even evaluate Carson's notices and complaints of patent infringement and, thereby, encouraging, aiding and abetting the infringing sales;

x.     Knowingly failing to "help[] protect the intellectual property rights" of Carson in accordance with its published policy and, thereby, encouraging, aiding and abetting the infringing sales;

y.     Knowingly promoting the sale of infringing products because that is in its economic interests, while misleading the buying public into believing eBay would not tolerate the sale of infringing goods on its website;

z.     Knowingly providing to infringing vendors techniques and means to ensure that they receive payment for selling infringing goods on the eBay website; and/or

aa.    Being willfully blind to the foregoing conduct and infringements.

58.     As a result of this infringing activity, Carson is entitled to an award of damages against eBay together with interest and costs in accordance with 35 U.S.C. § 284.

59.     Because eBay's infringement was willful, Carson is entitled to an award of increased damages pursuant to 35 U.S.C. § 284.

60.     This case is exceptional under 35 U.S.C. § 285, entitling Carson to the recovery of reasonable attorneys' fees and costs in pursuing this matter to judgment.

{N5093291;2}                                    24

## COUNT THREE (UNFAIR AND DECEPTIVE TRADE PRACTICES)

61.     Paragraphs 1 through 60 are hereby incorporated by reference as if fully set forth herein.

62.     The acts of eBay, detailed above, alone and/or in combination, constitute unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of trade and commerce.

63.     EBay's acts of unfair methods of competition and/or unfair or deceptive practices include the bad faith and willful inducement of infringement of the 729 and 601 Patents in such a manner as to directly and unfairly compete with Carson's business.

64.     Separately and additionally, EBay's acts of unfair methods of competition and/or unfair or deceptive practices involve its unfair and deceptive promulgation and publication of the VeRO Program which indicates to the public that eBay respects the intellectual property rights of others as long as such rights holders give eBay notice of the specific listings that infringe on their rights.

65.     In reality, eBay does not follow its own VeRO Program, and instead claims that it does not have the time to review the notices provided by intellectual property rights holders to determine whether eBay's listings infringe on such rights.

66.     Therefore, eBay unfairly and deceptively holds itself out to the public as a proactive respecter of intellectual property rights and gains the reputational and business advantages that this brings.  Yet, in fact, eBay unfair and deceptively does not follow its VeRO Program, does not respect intellectual property rights, and is not entitled to the reputational and business advantages that the public bestows on those that appear to respect intellectual property rights.

63.     As a result of eBay's unfair or deceptive acts or practices, Carson has suffered an ascertainable loss and is entitled to the recovery of consequential and punitive damages and an award of attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Carson prays for the following:

1.      An Order enjoining eBay from importing, offering for sale and selling products that infringe any claim of U.S. Patent No. 6,116,729.

2.      An Order enjoining eBay from importing, offering for sale and selling products that infringe any claim of U.S. Patent No. 6,215,601 B1.

3.      An award of money damages pursuant to 35 U.S.C. § 284 and the common law.

4.      An award of multiple damages pursuant to 35 U.S.C. § 284.

5.      An award of attorneys' fees and costs pursuant to 35 U.S.C. § 285.

6.      An award of interest and costs pursuant to 35 U.S.C. § 284.

7.      Such other relief as this Court deems just and proper.

## JURY DEMAND

Carson hereby requests a trial by jury of any issue so triable as of right pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

THE PLAINTIFF,
CARSON OPTICAL, INC.

By _____
John R. Horvack, Jr.
Federal Bar JH4878
John L. Cordani, Jr.
Federal Bar JC0914
Carmody Torrance Sandak & Hennessey, LLP
195 Church Street
P.O. Box 1950
New Haven, CT  06509-1950
Tel:  203-777-5501
Fax:  203-784-3199
jhorvack@carmodylaw.com

# EXHIBIT A



US006116729A

# United States Patent [19]

## Huang

| [11] | Patent Number: | **6,116,729** |
|---|---|---|
| [45] | **Date of Patent:** | **Sep. 12, 2000** |

[54] **HEAD MAGNIFYING GLASS**

[75] Inventor: **Tsung-Hui Huang**, Tai Pei, Taiwan

[73] Assignee: **GEM Optical Co., Ltd.**, Taichung Hsien, Taiwan

[21] Appl. No.: **09/376,842**

[22] Filed: **Aug. 18, 1999**

[30]      **Foreign Application Priority Data**

Sep. 28, 1998 [CN]  China ................................. 98 2 07452

[51] **Int. Cl.$^7$** .................................................. **G02C 1/00**
[52] **U.S. Cl.** ....................................... **351/41**; 351/158
[58] **Field of Search** ................................ 351/41, 158, 57; 2/452, 453

[56]              **References Cited**

U.S. PATENT DOCUMENTS

1,741,264  12/1929  Wappler ..................................... 351/158

| 3,945,712 | 3/1976 | Crock et al. | ............................... | 351/41 |
| 5,715,030 | 2/1998 | Quaresima | ............................... | 351/158 |
| 5,767,932 | 6/1998 | Gordon | ................................... | 351/158 |

*Primary Examiner*—Huy Mai
*Attorney, Agent, or Firm*—J. C. Patents; Jiawei Huang

[57]              **ABSTRACT**

A modified magnifying glass with more than one clamps built on the bottom of the fixer of head magnifying glass for clamping tenons stretching out from the top of magnifying plate. A pivoting seat is set up on the top of said fixer and a revolving bracket set up on the bottom of illuminating body is pivoted at said pivoting seat. It is convenient for the users to replace magnifying plates of different magnification according to needs and magnifying glass can be turned up to vanish from user's sight while it is not in use. Besides, the angle of depression and the angle of elevation of illuminating body can be adjusted by turning the revolving bracket pivoted in the pivoting seat to allow light directly irradiates in use and practical effect are realized.

**9 Claims, 6 Drawing Sheets**



Case 2:15-cv-03793-KAM-SIL   Document 15   Filed 08/14/15   Page 31 of 54 PageID #: 106



*F i g . 1*
*PRIOR ART*

Case 2:15-cv-03793-KAM-SIL   Document 15   Filed 08/14/15   Page 32 of 54 PageID #: 107



Fig. 2
PRIOR ART

Case 2:15-cv-03793-KAM-SIL   Document 15   Filed 08/14/15   Page 33 of 54 PageID #: 108



*Fig. 3*

Case 2:15-cv-03793-KAM-SIL   Document 15   Filed 08/14/15   Page 34 of 54 PageID #: 109



*F i g . 4*



Fig. 5



*Fig·6*

6,116,729

1

# HEAD MAGNIFYING GLASS

## BACKGROUND OF THE INVENTION

The present invention related to a head magnifying glass, and more particularly a construction of head magnifying glass, wherein magnifying plate can easily be replaced and the angle of illuminating can be adjusted in accordance with the needs of user.

With the quick development of industries in recent years, every industry gradually tends to the practical development of reducing volume and enabling all-round functions of products. Almost any industry such as precise electronic industry, precise mould manufacturing industry, seal carving industry, composing and typing industry, precise spring manufacturing industry, etc, all develop towards said direction without exception. In the manufacturing of these precise industries, workers have to use head magnifying glass to magnify work pieces for easy processing. FIGS. 1 and 2 show a conventional head magnifying glass **10**, wherein a slot **201** is carved out in front of fixer **20** and a magnifying glass plate **30** is locked up with its sides seated in the sides of slot **201** to fix said magnifying plate in slot **201**. Again, on the inner side of slot **201** is set up a movable plate **40** able to revolve and on said movable plate **40** a magnifying plate **401** is fixed. When said movable plate **40** is turned down, it is buttoned up by buttoning seat **202** on the inner side of slot **201**. On the outer side of slot **201** of fixer **20** there is a revolving magnifying plate **50** which, while in use, can be turned down to the front of magnifying plate **30**, and when it is not in use, it can be turned up to depart from the front of magnifying plate **30**. Moreover, an illuminating body **60** is placed on each side of fixer **20** respectively, and when head magnifying glass is used, by utilizing the three magnifying plates **30**, **401** and **50** to adjust magnification and illuminating bodies **60** as supplementary illumination, the magnification of work piece as well as the illumination onto the processing parts of work piece is realized. Although the above-mentioned object can be carried out by such construction, there are shortcomings in use yet as in the following:

1. As magnifying glass plates **30**, **401** and **50** are fixed on fixer **20** in different ways, magnification is bound to be the result of the composition of the three and it is unable to replace magnifying glass place in accordance with user's needs. As a result, magnification can only be bound within certain definite magnifications, leading to the limitation of magnification;

2. Furthermore, although magnifying plates **401** and **50** can be turned up and/or down according to user's selection and compose with magnifying plate **30**, when the user does not need magnifying plate, his Sight is still blocked by magnifying plate **30** and is still magnified because said magnifying plate **30** is fixed in front of the sight of user. As a result, in order to get his sight depart from the magnifying scope, the user has to take off the whole set of head magnifying glass, and it is sure that this is inconvenient for use.

3. As magnifying plate **30** is locked up at the lateral side of slot **201** of fixer **20**, both of its sides will be blocked by the edges of slot **201**, the range of sight is thus limited so that the 3-dimentional visual sense of object is worsened.

4. As the illumination of illuminating bodies **60** comes form both sides of fixer **20**, its light can not be concentrated into a light beam illuminating upon the processing part of working piece and thus the illumination effect is lowered. Besides, since illuminating bodies **60** are fixed at both sides of fixer **20**, they can not be adjusted to turn up and

2

down and/or to the left and right so that the illuminating part may not be the required part of user, and the user can not make any adjustment for this, resulting in another difficulty in use.

## SUMMARY OF THE INVENTION

The major object of the present invention is to provide a modified head magnifying glass to resolve the above-mentioned problem, wherein by utilizing the clamps set up on the bottom of fixer clamping up the tenons on the top of magnifying plate of different magnification. Again, the magnifying plate can be turned up when it is not used for easy selection of the user. Magnifying plate is suspended with clamps, its side edges appear empty without frame so that the wide visual scope is attained and the stereoscopic visual scene is improved as well

The second object of the present invention is to provide a modified head magnifying glass, wherein the clamps on the fixer can clamp up two magnifying plates, one of which being in the front and the other in the rear, therefore the magnification is the composition of both of them and the adjustment of magnification at will is achieved. The other object of the present invention is to provide a modified head magnifying glass, wherein said illuminating body is pivoted at the pivoted seat of fixer by utilizing a revolving bracket made on its bottom so that the angle of depression and/or elevation can be adjusted by turning the revolving bracket. At the same time, by utilizing the pivoting connection between the illuminating body and the revolving bracket, the illuminating body can also be turned to the right or to the left to change the illuminated position of the light of illuminating body.

The object of the present invention is carried out in the following way:

A modified head magnifying glass, wherein more than one clamps are set up on the bottom of the fixer of head magnifying glass for clamping the tenons stretching out from the top of magnifying plate; a pivoting seat is established on the top of said fixer and a revolving bracket on the bottom of an illuminating body is pivoted at said pivoting seat to allow illuminating body to adjust its depression and/or elevation angle by turning the revolving bracket in the pivoting seat.

The clamps on the bottom of said fixer face each other in pairs, and the number of tenons on the top of magnifying plate matches that of clamps facing each other.

Several slide-resistant strips are attached to the surface of the revolving bracket of said illuminating body and an arc-shaped stopper is made under the bottom of the pivoting seat to allow the illuminating body to be fixed at an inclined angle by utilizing the friction between the slide-resistant strips and the arc-shaped stopper.

Said illuminating body is combined with the top of revolving bracket by means of pivoting connection so that it is able to turn to the left or to the right. The advantageous effect brought about by the above technical scheme is apparent: As said magnifying plate can be fixed on the fixer by the method of clamping, users will replace magnifying plates of different magnification according to their needs; besides, replacement is made very easy and when user does not need to use the magnifying plate, it can be turned up to depart from the user's sight by revolving the stretching tenons clamped by the clamps. Further more, said illuminating body able to adjust its depression and elevation angle is possible to adjust its illumination depression and/or elevation angle to allow light to irradiate upon the processing

6,116,729

**3**

point directly so that various operation convenience and practical effect are realized.

## BRIEF DESCRIPTION OF THE DRAWINGS

1. FIG. **1** is a schematic background showing the 3-dimentional view of a conventional head magnifying glass;

2. FIG. **2** is a schematic diagram of a conventional head magnifying glass;

3. FIG. **3** is a 3-dimentional exploded diagram of the present invention;

4. FIG. **4** is a schematic diagram showing the combination of the present invention;

5. FIG. **5** is a schematic diagram showing the adjustment of magnifying plates of the present invention; and

6. FIG. **6** is a schematic diagram showing the adjustment of the depression angle and elevation angle of illuminating body of the present invention.

## Denotation of Marking Numbers:

Conventional head magnify glass part:
**10**-head magnifying glass
**20**-fixer
**201**-slot
**202**-buttoning seat
**40**-movable plate
**30**-magnifying plate
**60**-illuminating body
**401**-magnifying plate
**50**-magnifying plate
The present invention part:
**1**-head magnifying glass
**2**-fixer
**21**-clamp
**22**-pivoting seat
**221**-stopper
**3**-magnifying plate
**31**-tenon
**4**-illuminating body
**41**-revolving bracket
**441**-slide-resistant strip

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Now the present invention will be clarified in detail by embodiments thereof shown in the attached drawings.

In the FIGS. **3** and **4**, more than one set of clamps **21** facing each other in pairs are set up under the bottom of the fixer **2** of head magnifying glass **1** to allow the tenons **31** stretching out from the top of magnifying plate **3** to be clamped in them; a pivoting seat **22** is built above the fixer **2** and said pivoting seat **22** is connected by pivoting with a revolving bracket **41** revolving in the pivoting seat **22**. Besides, several slide-resistant strips **411** are attached to the surface of revolving bracket **41** beneath the bottom of illuminating body **4** and an arc-shaped stopper **211** conforming the arrangement of said slide-resistant strips **441** is built under the bottom of pivoting seat **22** to allow illuminating body **4** to stay at a certain angle by means of the friction between slide-resistant strips **441** and arc-shaped stopper **221**. In the above construction, said illuminating body **4** is combined with the top of revolving bracket **41** by pivoting to enable said illuminating body **4** to turn to the left or to the right.

In FIG. **5** said magnifying plate **3** is clamped up in clamps **21** by its tenons **31**, hence said tenons clamped up in clamps

**4**

**21** will turn up simultaneously with the turning up of magnifying plate **3** so that the magnifying plate **3** will depart from user's sight while it is not in use, and thus the convenience of use for the user of whether the work piece is needed to be magnified or not is provided. Moreover, as said magnifying plate **3** is fixed by clamping tenons **31** in clamps **21**, the user is able to take apart the original magnifying plate **3** and replace it with another magnifying plate **3** of different magnification, or it is also possible to put in order two magnifying plates **3** and **3'**, with one before the other in the corresponding positions in clamps **21** to compose the magnification of both of them so that user can adjust the magnification arbitrarily.

In FIG. **6**, in the course of processing, if the user needs auxiliary light to irradiate upon the processing article, to facilitate processing, he just needs to switch on the illuminating body, and if the distance of illumination is needed to be adjusted, he can turn the illuminating body **4** to make it rotate by utilizing revolving bracket **41** rotating in pivoting seat **22**, and meanwhile, by utilizing the friction between the stopper **221** of pivoting seat **22** and the slide-resistant strips **441** of revolving bracket **41**, the revolving bracket **41** can be made stay at a certain inclined angle, to change the irradiating position so as to achieve the goal of exact illumination onto the processing article.

Take the advantage of the above, the present invention creates beneficial results as follows:

1. As magnifying plate is fixed in the clamping seat by the method of clamping, when the user wants to replace the original magnifying plate with another one of different magnification, he only needs to take apart the original one so replacement is made very easy. Besides, by utilizing 2 magnifying plates placed one before the other, magnification will be the composition of that of the two, and the object of arbitrarily adjusting magnification is thus achieved.

2. Secondly, as the tenons of magnifying plate clamped the clamps can rotate, when there is no need to use the magnifying plate, the user will turn it up and it will then depart from the user's visual range, and conversely, the magnifying plate can be turned down to return to its original position.

3. Furthermore, as the magnifying plate is fixed with the tenons on its top clamped by the clamps beneath the fixer, its side edges appear to be suspending state, which allows wider visual scope of magnifying plate as well as better stereoscopic visual sense.

4. Since the revolving bracket on the bottom of said illuminating body can rotate in the pivoting seat, the angle of depression and/or elevation of illuminating body can be adjusted to change the illuminated part of working article to achieve the object of exact illumination upon the processing part of work piece.

5. In addition, as the illuminating body can also make left or right turning by utilizing the pivoting connection with the top of revolving bracket, the brightness of its light can be adjusted on the left or right side.

To sum up, the present invention possesses the above-mentioned advantages compared with conventional construction, it is thereby that the inventor applies for a patent for the present invention.

I claim:

**1**. A head magnifying glass comprising:

a fixer with an upper surface and a bottom surface, the fixer having more than one clamps on the bottom surface thereof;

a magnifying plate having tenons stretching out from top portion of the magnifying plate for engaging with the clamps so as to connect the magnifying plate to the fixer;

6,116,729

5

a pivoting seat on the upper surface of the fixer;

an illuminating body connected to the pivoting seat in such a way that the illuminating body is able to rotate around a first axis.

**2**. The head magnifying glass according to claim **1**, wherein the first axis is substantially parallel with the upper surface of the fixer.

**3**. The head magnifying glass according to claim **1**, wherein the clamps on the bottom surface of said fixer face each other in pairs, and the number of tenons on the top portion of the magnifying plate matches that of the corresponding clamps.

**4**. The head magnifying glass according claim **1**, further comprising a revolving bracket having a first end and a second end, wherein the first end is pivotally connected to the pivoting seat and the second end is coupled to the illuminating body.

**5**. The head magnifying glass according claim **4**, wherein at least one slide-resistant strip is provided on surface of the revolving bracket at the first end and an arc-shaped stopper is provided on the pivoting seat to allow the revolving bracket to fix the illuminating body at a proper position by means of friction between the slide-resistant strip and the arc-shaped stopper.

**6**. The head magnifying glass according to claim **4**, wherein the illuminating body is pivotally connected with

6

the second end of the revolving bracket, allowing the illuminating body to turn around a second axis.

**7**. The head magnifying glass according to claim **6**, wherein the second axis is substantially perpendicular to the first axis.

**8**. A head magnifying glass comprising:

a sheet-shaped fixer having a first connecting means on a bottom surface of the sheet-shaped fixer;

a magnifying plate having a second connecting means on a top portion of the magnifying plate for engaging with the first connecting means so as to pivotally and removably connect the magnifying plate to the sheet-shaped fixer;

a third connecting means on the upper surface of the sheet-shaped fixer;

an illuminating body pivotally attached to the upper surface of the sheet-shaped fixer through the third connecting means so that the illuminating body is able to rotate around a first axis substantially parallel with the upper surface of the sheet-shaped fixer.

**9**. The head magnifying glass according to claim **8**, wherein the illuminating body is structured so as to be able to rotate around a second axis substantially perpendicular to the first axis.

\* \* \* \* \*

# EXHIBIT B



US006215601B1

(12) **United States Patent**  (10) Patent No.:     **US 6,215,601 B1**

Huang  (45) Date of Patent:     **Apr. 10, 2001**

(54) **HEAD BELT OF HEAD MAGNIFYING GLASS**

(75) Inventor: **Tsung-Hui Huang**, Tai Ping (TW)

(73) Assignee: **GEM Optical Co., Ltd.**, Taichung (TW)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/376,595**

(22) Filed: **Aug. 18, 1999**

(30) **Foreign Application Priority Data**

Sep. 28, 1998 (CN) ............................................. 98 2 07451.4

(51) Int. Cl.⁷ ............................. **G02B 27/02**; A41D 13/00
(52) U.S. Cl. ..................................... **359/802**; 2/417
(58) **Field of Search** ................................... 359/802, 809, 359/810, 811, 818, 822, 829, 830; 2/6.3, 410, 417, 418, 419, 452, 453, 10, 15; 24/17 A, 3.13, 30.5 P, 188, 170, 190

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,431,365 * 7/1995 Feng ....................................... 248/683

5,467,508 * 11/1995 Feng ..................................... 24/68 SK
5,844,656 * 12/1998 Ronzani et al. ..................... 351/158
6,116,729 * 9/2000 Huang .................................... 351/41

* cited by examiner

*Primary Examiner*—Georgia Epps
*Assistant Examiner*—Saeed Seyrafi
(74) *Attorney, Agent, or Firm*—Jiawei Huang; J C Patents

(57)     **ABSTRACT**

A head belt of head magnifying glass includes a first and a second head belt set up at both sides of the fixer of magnifying glass. More than one buttoning holes are made on the first head belt vertically. A buttoning seat stretches out from the second head belt. A vacancy forms between said buttoning seat and the second head belt. A through hole is made at the inner and of the buttoning seat and a movable plate is fixed on the buttoning seat. The movable plate is pivoted by its both sides at near the middle part of the lateral sides of buttoning seat. A clamping key is established at the end where the movable plate corresponds with the through hole of buttoning seat and a spring plate is built at the other end. It is easy adjustable by inserting the first bead belt in the above mentioned vacancy and buttoning up the clamping key with the buttoning hole and durableness of head belt is thus achieved.

**4 Claims, 7 Drawing Sheets**



Case 2:15-cv-03793-KAM-SIL   Document 15   Filed 08/14/15   Page 42 of 54 PageID #: 117



*Fig. 1*
PRIOR ART

Case 2:15-cv-03793-KAM-SIL   Document 15   Filed 08/14/15   Page 43 of 54 PageID #: 118



*Fig·2*



Fig. 3

Case 2:15-cv-03793-KAM-SIL  Document 15  Filed 08/14/15  Page 45 of 54 PageID #: 120



Fig.4



Fig. 5



*Fig. 6*

Case 2:15-cv-03793-KAM-SIL   Document 15   Filed 08/14/15   Page 48 of 54 PageID #: 123



Fig. 7

US 6,215,601 B1

**1**

## HEAD BELT OF HEAD MAGNIFYING GLASS

### BACKGROUND OF THE INVENTION

The present invention relates to a head belt of head magnifying glass, and more particularly to an easy adjustable and more durable head belt construction.

With the quick development of industries in recent years, every industry gradually tends to the practical development of reducing volume and enabling all-around functions of products. Almost any industry such as precise electronic industry, precise mould manufacturing industry, seal caving industry, composing and typing industry, precise spring, etc., all develops towards said direction without exception. In the course of manufacturing of those precise industries workers have to use head magnifying glass to magnify work piece for easy processing. FIG. 1 shows a conventional head magnifying glass 10. A first head belt 20 and a second head belt 30 stretch backward from each side of fixer 102 for fixing magnifying glass 101, respectively. A female sticking belt 201 is sewed up on the inner side of the first head belt 20, while a male sticking belt 301 is sewed up on the outer side of the second head belt 30. When the male sticking belt 301 is made stick to the female sticking belt 201, the first belt 20 and the second head belt 30 get fixed together, forming a ring putting fast on the user's head and enabling him to process the work piece which is magnified by the magnifying glass 101 on fixer 102. However, because of the different sizes of heads of users as well as sticking up and/or coming off of male sticking belt 301 and female sticking belt 201 while putting on and/or taking off the magnifying glass, villus on male sticking belt 301 and female sticking belt 201 will come off and become less through repeated use, leading to low sticking effect. As a result, the first head belt 20 and the second head belt 30 can not be combined closely and thus lose their effect. For this, the user has to get a new head belt for replacement, and surely, this is disadvantageous in use.

### SUMMARY OF THE INVENTION

The major object of the invention is to provide a modified head belt of head magnifying glass to resolve the problem stated above. A movable plate is set up on the buttoning hole made on the first head belt. It separates from the buttoning hole due to lever movement while pressing its one end, and it remains buttoned up well with the buttoning hole when it is not pressed down. After repeated operation of combining and separating the movable plate and buttoning hole, nice buttoning is still kept so that convenient adjustment and longer duration of head belt are achieved.

The object of the invention is carried out by providing a head belt of head magnifying glass, wherein a first head belt and a second head belt stretch backward from each side of the fixer of head magnifying glass respectively.

More than one vertical buttoning holes are made at certain space along said first head belt.

A stretching out buttoning seat is set up at certain place of said second head belt with a vacancy formed between said buttoning seat and the second head belt; a through hole is made at the inner end of buttoning seat and a movable plate is fixed on the buttoning seat; said movable plate is pivoted by the part near the middle of each side of buttoning seat; a clamping key is established at one end of the movable plate corresponding the through hole of the buttoning seat and a spring plate is set up at the other end of the movable plate.

This allows the first head belt to be inserted into the vacancy between the second head belt and the buttoning seat, and by utilizing the clamping key of the movable plate

**2**

penetrating the through hole of the buttoning seat to button up in the buttoning hole of the first head belt, the first and second head belts are closely combined. As said movable plate is pivoted at the buttoning seat, when its outer end is pressed down, it is able to revolve with the pivoted part as its fulcrum to have the end where the clamping key is placed rise so that the clamping key separates from the buttoning hole of the first head belt so as to allow the first head belt to adjust its position along the second head belt or separate from the second head belt. Thus the object of easy adjustment and durable effect is acquired.

There is a binding sleeve on the second head belt used to bind the end of the first head belt.

A pivot axle is built on each side of the movable plate near its middle and said pivot axle is inserted in the pivot hole on each side of the buttoning seat to make the movable plate combined with the buttoning seat

Said first head belt and said second head belt are respectively pivoted at the end of one of the two sides of the fixer of head magnifying glass.

The beneficial effect of adopting the above-mentioned technical scheme is apparent: Since said head magnifying is in the shape of a ring by buttoning up the first and second head belts, it allows adjusting the size of combined ring according to the needs of users and/or separating them from each other. Besides, as the first and second head belts of said head belt are inked linked together by means of a buttoning movable plate, such construction will keep very nice buttoning effect after many times of separating and buttoning. So that the efficacy of elongating the duration of use of the head belt is achieved.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view showing a conventional head magnifying glass;

FIG. 2 is an exploded view of the present invention;

FIG. 3 is a top view of the head magnifying glass showing the composition view of the invention;

FIG. 4 is a side view of the head magnifying glass showing the use of the invention;

FIG. 5 is a top view of the head magnifying glass showing the operation of the invention;

FIG. 6 is a top view of the head magnifying glass showing the operation of the invention;

FIG. 7 is a top view of the head magnifying glass showing the operation of the invention;

---

DENOTATION OF MARKING NUMBERS:

Conventional head magnifying glass part:

| | |
|---|---|
| 10-head magnifying glass | 101-magnifying glass |
| 102-fixer | 20 the first head belt |
| 201-female sticking belt | 30-the second head belt |
| 301-male sticking belt | |

The present invention part:

| | |
|---|---|
| 1-head magnifying glass | 2-the first head belt |
| 21-buttoning hole | 11-fixer |
| 31-binding sleeve | 3-the second head belt |
| 41-pivot hole | 4-buttoning seat |
| 5-vacancy | 42-through hole |
| 61-pivot axle | 6-movable plate |
| 63-spring plate | 62-lamping key |

---

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Now the present invention will be described in detail by embodiments thereof shown in the attached drawings.

US 6,215,601 B1

**3**

In FIG. 2, a first head belt 2 and a second head belt 3 are set up respectively on the backward end of one of the two sides of fixer 11 of head magnifying glass 1 of the invention. Said first head belt 2 is pivoted at the end of one side of the fixer 11 of head magnifying glass and more than one vertical buttoning holes 21 are made at certain space on said first head belt 2. Said second head belt is pivoted at the end of the other side of fixer 11 of head magnifying glass and a buttoning seat 4 stretches out from proper part of the end to leave a vacancy 5 (See FIG. 3) formed between said buttoning seat 4 and the second head belt 3; a pivot hole 41 is made at the middle of each side of buttoning seat 4 and a through hole 42 is set up at the inner end of buttoning seat 4. Besides, on said buttoning seat 4 is fixed a movable plate 6 and on each side of said movable plate 6 corresponding pivot hole 41 of buttoning seat is set up a pivot axle 61 respectively. A clamping key 62 is established on the end of movable plate 6 corresponding to through hole 42 of buttoning seat 4 and on the other end of the movable plate 6 is set up a spring plate 63. Again, there is a binding sleeve 31 on said second head belt 3 to bind the end of the first head belt while buttoning up with the second head belt.

In FIG. 3, while assembling, pivot axle 61 is put into the pivot hole 41 of buttoning seat 4 to enable movable plate 6 to conduct a lever movement with said pivot axle 61 as fulcrum. When the end of movable plate 6, where spring plate 63 is set up, is pressed, one end of movable plate 6 moves downward by the pressure of spring plate 63 and the other end, where clamping key 62 is placed, turns upwards due to the lever movement. Whereas, when the end, where spring plate 63 lies, is not pressed, the other end, where there is spring plate 63, returns to its normal position by utilizing release of elasticity of spring plate 63, and at this time, the other end, where clamping hey 62 exists, of movable plate 6 moves downward to achieve the object of the lever movement.

In FIG. 4, when the first head belt 2 is inserted in the vacancy 5 between the second head belt 3 and buttoning seat 4, by utilizing buttoning up clamping key 62 of movable plate 6 and buttoning hole 21 of the first head belt 2, the first head belt 2 and the second head belt 3 are combined to form a ring for sleeving user's head 12. It is seen from FIG. 5 that in order to adjust the size of ring formed by the first head belt 2 and second head belt 3 to fit user's head, the end with spring plate 63 of said movable plate 6 is pressed down to allow movable plate 6 to conduct a lever movement to turn up the other end with clamping key 62 so that the clamping key 62 will be disengaged from the buttoning hole 21 of the first head belt 2. In FIG. 6, it is seen, after having been disengaged from buttoning by movable plate 6 of the second head belt 3, the first head belt 2 is able to move freely in vacancy 5 to form an intended ring size by adjusting its combining position with the second head belt 3 or to be pulled out from vacancy 5. It is seen from FIG. 7 that when

**4**

the first head belt 2 is adjusted to the proper position in vacancy 5, the user no longer presses on the end with spring plate 63 of movable plate 6 to allow said end of movable plate 6 to move upwards by means of the elasticity of spring plate 63, and meanwhile, movable plate 6 conducts lever movement to drive the other end with clamping key 62 to move downward to have it penetrate the through hole 42 of buttoning seat 4 and button in the buttoning hole 21 of the first head belt 2 so as to attain the object of adjusting the head ring size and/or combining or separating the two head belts.

To sum up, owing to the fact that the head belt of conventional head magnifying glass is stuck up by sticking belts, through times of coming off and sticking up in use, the sticking effect between female and male sticking belts will turn worse and even lose stickness, and as a result, the ring size of head belt can not be fixed so that the effect of usage will finally lose. Nevertheless, buttoning method is used in the present invention so it will keep nice buttoning effect after many times of separating and buttoning up in use. The head belt will be more durable for use and improve realistic effect compared with conventional ones.

I claim:

1. A head belt for a head magnifying glass, wherein the head magnifying glass has a fixer with a first end and a second end, the head belt comprising:

a first head belt coupled to the first end of the fixer;

a second head belt coupled to the second end of the fixer, wherein more than one vertical buttoning holes are formed on the first head belt;

only one buttoning seat coupled to the second head belt and forming a vacancy between the buttoning seat and the second head belt, wherein a through hole is formed in the buttoning seat;

a movable plate pivotally coupled to the buttoning seat, wherein a clamping key is set up at one end of the movable plate for engaging with the through hole of the buttoning seat, and a spring plate is established at the other end of the movable plate.

2. The head belt according to claim 1, wherein there is a binding sleeve on the second head belt used to bind up the first head belt.

3. The head belt according to claim 1, wherein there is a pivot axle at a middle portion of the movable plate, and the pivot axle is put in a pivoting hole on a lateral side of the buttoning seat to pivotally connect the movable plate with the buttoning seat.

4. The head belt according to claim 1, wherein the first belt and the second, head belt are pivotally connected to the first end and the second end of the fixer of the head magnifying glass, respectively.

* * * * *

US006215601C1

(12) **EX PARTE REEXAMINATION CERTIFICATE** (9918th)

# United States Patent
Huang

(10) **Number:** US 6,215,601 C1
(45) **Certificate Issued:** Nov. 1, 2013

(54) **HEAD BELT OF HEAD MAGNIFYING GLASS**

(75) Inventor: **Tsung-Hui Huang**, Tai Ping (TW)

(73) Assignee: **Carson Optical, Inc.**, Hauppauge, NY (US)

**Reexamination Request:**
No. 90/012,574, Sep. 14, 2012

**Reexamination Certificate for:**
Patent No.: **6,215,601**
Issued: **Apr. 10, 2001**
Appl. No.: **09/376,595**
Filed: **Aug. 18, 1999**

(30) **Foreign Application Priority Data**

Sep. 28, 1998   (CN) .................................. 98 2 07451

(51) **Int. Cl.**
| | |
|---|---|
| G02B 7/00 | (2006.01) |
| G02B 25/00 | (2006.01) |
| G02B 25/02 | (2006.01) |
| G02C 3/00 | (2006.01) |
| G02C 3/02 | (2006.01) |

(52) **U.S. Cl.**
USPC .............................................. 359/802; 2/417

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number 90/012,574, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner* — Margaret Rubin

(57) **ABSTRACT**

A head belt of head magnifying glass includes a first and a second head belt set up at both sides of the fixer of magnifying glass. More than one buttoning holes are made on the first head belt vertically. A buttoning seat stretches out from the second head belt. A vacancy forms between said buttoning seat and the second head belt. A through hole is made at the inner end of the buttoning seat and a movable plate is fixed on the buttoning seat. The movable plate is pivoted by its both sides at near the middle part of the lateral sides of buttoning seat. A clamping key is established at the end where the movable plate corresponds with the through hole of buttoning seat and a spring plate is built at the other end. It is easy adjustable by inserting the first bead belt in the above mentioned vacancy and buttoning up the clamping key with the buttoning hole and durableness of head belt is thus achieved.



US 6,215,601 C1

# 1

# EX PARTE
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the
patent, but has been deleted and is no longer a part of the
patent; matter printed in italics indicates additions made
to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

Claim **1** is cancelled.

Claims **2-4** are determined to be patentable as amended.

New claims **5**, **6** and **7** are added and determined to be
patentable.

**2**. The head belt according to claim [**1**] *4*, wherein there is
a binding sleeve on the second head belt used to bind up the
first head belt.

**3**. The head belt according to claim [**1**] *4*, wherein there is
a pivot axle at a middle portion of the movable plate, and the
pivot axle is put in a pivoting hole on a lateral side of the
buttoning seat to pivotally connect the movable plate with the
buttoning seat.

**4**. [The head belt according to claim 1.] *A head belt for a
head magnifying glass, wherein the head magnifying glass
has a fixer with a first end and a second end, the head belt
comprising:*

*a first head belt coupled to the first end of the fixer;*

*a second head belt coupled to the second end of the fixer,
wherein more than one vertical buttoning holes are
formed on the first head belt;*

*only one buttoning seat coupled to the second head belt and
forming a vacancy between the buttoning seat and the
second head belt, wherein a through hole is formed in the
buttoning seat;*

# 2

*a movable plate pivotally coupled to the buttoning seat,
wherein a clamping key is set up at one end of the
movable plate for engaging with the through hole of the
buttoning seat, and a spring plate is established at the
other end of the movable plate;*

wherein the first belt and the second[**.**] head belt are pivot-
ally connected to the first end and the second end of the
fixer of the head magnifying glass, respectively.

*5. A head belt for a head magnifying glass, wherein the
head magnifying glass has a fixer with a first end and a second
end, the head belt comprising:*

*a first head belt coupled to the first end of the fixer;*

*a second head belt coupled to the second end of the fixer,
wherein a plurality of vertical buttoning holes are
formed into the first head belt;*

*only one buttoning seat coupled to the second head belt and
forming a vacancy between the buttoning seat and the
second head belt, wherein a through hole is formed in the
buttoning seat and wherein the first head belt and the
second head belt form a ring when the first head belt is
inserted into the vacancy between the buttoning seat and
the second head belt,*

*a movable plate pivotally coupled to the buttoning seat,
wherein a clamping key is set up at one end of the
movable plate for penetrating the through hole of the
buttoning seat and not engaging in a slanted or diagonal
direction around an edge of the one of the plurality of
vertical buttoning holes, and a spring plate is estab-
lished at the other end of the movable plate.*

*6. The head belt according to claim 5, wherein said clamp-
ing key is adapted to engage and disengage with said plurality
of vertical buttoning holes, upon release and pressing,
respectively, of the end of movable plate where the spring
plate is set up, as said buttoning seat moves away from the end
of the second head belt while in a ring configuration.*

*7. The head belt according to claim 5, wherein the first head
belt and the second head belt are pivotally connected to the
first end and the second end of the fixer of the head magnifying
glass, respectively.*

\* \* \* \* \*

# EXHIBIT C

