UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
CARSON OPTICAL INC.,

        Plaintiff,

  -against-

EBAY INC.,

        Defendant.
--------------------------------X

**MEMORANDUM & ORDER**
15-CV-3793 (KAM)(SIL)

**MATSUMOTO, United States District Judge:**

      Plaintiff Carson Optical Inc. ("plaintiff") brought this patent infringement action against online marketplace eBay Inc. ("defendant"), claiming that defendant has induced infringement by permitting items that allegedly infringe plaintiff's patents to be sold on defendant's website. Plaintiff also asserts an unfair competition claim under New York state law. Defendant has moved to dismiss the operative Amended Complaint for failure to state a claim. For the reasons that follow, defendant's motion is GRANTED in part and DENIED in part.

<u>BACKGROUND</u>

      The following facts derive from the Amended Complaint. (ECF No. 15, Amended Complaint ("Compl.").) All well-pleaded allegations are taken as true, and all reasonable inferences are drawn in favor of the plaintiff, for purposes of deciding the

instant motion to dismiss. *See Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007).

## I.   ***The Parties***

Plaintiff markets and sells optical products, and owns, by assignment, the two patents at issue in this action. (Compl. at 1-2.[1]) The first of plaintiff's patents, U.S. Patent No. 6,116,729 (the "'729 patent"), is directed to a "head magnifying glass." (*Id.* at 2, 8, 10-11; *see also id.*, Exs. A, C.) The second patent, U.S. Patent No. 6,215,601 (the "'601 patent"), "is directed to a head belt for a head magnifying glass." (*Id.* at 2, 16, 18-20; *see also id.*, Exs. B-C.) The inventions claimed by the patents are embodied in plaintiff's "MagniVisor Deluxe" product, which is essentially a head visor with an attached magnifying lens and a light. (*Id.* at 2-3; *see also id.*, Exs. A-C.) Plaintiff alleges that the MagniVisor Deluxe "has been well received by the consuming public, and it has become a commercial success, leading to rampant illegal copying by Chinese manufacture[r]s of the claimed inventions." (*Id.* at 3.)

Defendant is an e-commerce company that runs one of the "world's largest online marketplaces." (*Id.*) Plaintiff does not

---

[1] Because plaintiff has mistakenly repeated some of the paragraph numbers in the complaint, the court refers to the page numbers in the complaint rather than to individual paragraphs.

allege that defendant ever takes possession of or sells the items offered for sale on its website. Instead, defendant's website provides a medium to connect individual buyers and sellers, and defendant provides a wide range of service that facilitate the sale and purchase of items on its website (*Id.* at 3-6.) For example, defendant offers vendors a service called "eBay University," which furnishes vendors with tips on how to improve sales. (*Id.* at 4.) Additionally, defendant "provides vendors with techniques and means to ensure that vendors receive payment" for items sold on its website. (*Id.* at 6.) Defendant generates revenue with a "complex system of fees for services, listing product features, and a Final Value Fee for sales proceeds received by sellers." (*Id.* at 3.) At any given time, 800 million items are listed on defendant's website, which has an annual revenue exceeding $17.9 billion. (*Id.*)

Defendant also maintains the Verified Rights Owner Program ("VeRO"), which permits "intellectual property owners [to] easily report listings that infringe their rights." (*Id.* at 6-7.) VeRO procedures allow aggrieved intellectual property owners to file online complaint forms, referred to as Notice of Claimed Infringement (or "NOCI") forms. (*Id.*)

3

## II.  *The Instant Dispute*

Plaintiff alleges that at least as early as February 7, 2014, after discovering that numerous items available on defendant's website infringed one or more claims of the '729 and '601 patents, plaintiff followed defendant's VeRO program procedures by submitting NOCI forms.[2] (*Id.* at 7-8, 16.) Plaintiff learned, however, that defendant would not remove a listing on its website without a determination, either by a court or by the United States International Trade Commission, that the listed item infringes one of plaintiff's patents. (*Id.* at 7.) Because plaintiff had not obtained such an order, defendant refused to remove the allegedly infringing listings. (*Id.*) Plaintiff contends that defendant, besides refusing to "remove or cancel listings of infringing products," further refused "to even evaluate whether the listings of infringing products are inappropriate under its own published policies." (*Id.* at 15, 23-24.)

On June 29, 2015, plaintiff commenced this action against defendant, asserting three claims. (ECF No. 1.) Plaintiff subsequently amended its complaint. (Compl.) First, plaintiff alleges that defendant induced infringement of the '729 patent.

---

[2] In support of its motion to dismiss, defendant attached NOCI letters referred to by plaintiff in its complaint. They are dated December 30, 2013 and May 19, 2015. (ECF No. 17, Exs. 2-3.)

(*Id.* at 8-16.) Second, plaintiff alleges that defendant induced infringement of the '601 patent. (*Id.* at 16-24.) Third, plaintiff alleges that defendant's actions constitute unfair competition under New York law. (*Id.* at 25-26.)

Defendant subsequently moved to dismiss the complaint and filed a memorandum in support of its motion. (ECF No. 17, Ex. 9, Defendant's Memorandum in Support of Defendant's Motion to Dismiss ("Def. Mem.").) Plaintiff filed a memorandum in opposition to defendant's motion, to which defendant replied. (ECF No. 17, Ex. 10, Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Pl. Opp'n"); ECF No. 17, Ex. 11, Defendant's Reply in Support of Defendant's Motion to Dismiss ("Def. Reply").)

## **LEGAL STANDARD**

As noted earlier, on a motion to dismiss all well-pleaded factual allegations in the complaint are taken as true and all inferences are drawn in the plaintiff's favor. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). The

complaint must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks and citation omitted).

Although Federal Circuit law governs much of this action, the Federal Circuit applies regional circuit law in evaluating whether a complaint states a claim upon which relief can be granted. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012) ("Because it raises a purely procedural issue, an appeal from an order granting a motion to dismiss for failure to state a claim upon which relief can be granted is reviewed under the applicable law of the regional circuit." (citation omitted)).

## DISCUSSION

### I.    *Inducement*

The Federal Patent Act, as relevant in this action, provides for two forms of liability: direct infringement and inducement to infringe. *See* 35 U.S.C. § 271 ("§ 271"). Plaintiff

does not allege that defendant is liable for direct infringement, which is governed by § 271(a).[3] Instead, plaintiff alleges that defendant induced infringement within the meaning of § 271(b), which provides in relevant part: "Whoever actively induces infringement of a patent shall be liable as an infringer." § 271(b). Induced infringement, unlike direct infringement, requires a particular mental state. *See Commil USA, LLC v. Cisco Sys.*, Inc., 135 S. Ct. 1920, 1926 (2015).

To state a claim for induced infringement, a plaintiff must plausibly allege that the defendant: (1) had knowledge of the patent-in-suit; (2) knew the induced acts were infringing; and (3) specifically intended to encourage another's infringement. *See id.* ("[I]nduced infringement . . . requires knowledge of the patent in suit and knowledge of patent infringement."); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement."); *Bill of Lading*, 681 F.3d at 1339 ("[I]nducement requires that the alleged infringer

---

[3] Section 271(a) provides: "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." Direct infringement is a strict-liability offense, and therefore has no mental state requirement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015).

knowingly induced infringement and possessed specific intent to encourage another's infringement." (internal quotation marks and citation omitted)); *see also Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (applying *Commil* and *Global-Tech* — both post-trial decisions — at the pleading stage). Further, "inducement liability may arise if, but only if, [there is] . . . direct infringement" by another party. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014) (citation omitted); *see also Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc.*, No. 12-CV-1099, 2015 WL 5785574, at *2 (C.D. Ill. Oct. 2, 2015) ("[T]here can be no inducing infringement without direct infringement by another party." (citing *Limelight*, 134 S. Ct. at 2115-17)).

The *Global-Tech* Court held that the knowledge requirement for liability under § 271(b) could be met by a finding of willful blindness. *See* 563 U.S. at 766-71. Willful blindness has "two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 769 (citations omitted). The Court contrasted the willfully blind (and therefore liable) defendant with a reckless defendant, who "merely knows of a substantial and

unjustified risk" of wrongdoing, and the negligent defendant, who "should have known of a similar risk but, in fact, did not." *Id.* at 769-70. Neither recklessness nor negligence would satisfy the knowledge requirement for liability under § 271(b). *Id.*

In evaluating intent, "direct evidence is not required; rather, circumstantial evidence may suffice." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (internal quotation marks and citation omitted); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988) ("The requisite intent to induce infringement may be inferred from all of the circumstances.").

Because plaintiff's claims regarding inducing infringement are functionally identical for both the '729 and '601 patents (*compare* Compl. at 8-16, *with id.* at 16-24), the court does not distinguish between the two patents for purposes of this analysis unless otherwise noted.

A.    *Allegations of Defendant's Knowledge of the Patents-in-Suit*

Defendant does not appear to dispute that it had knowledge of the patents-in-suit at least as early as February 7, 2014, the date defendant claims it received plaintiff's first NOCI pursuant to defendant's VeRO program. (*See id.* at 8 ("Since at least February 7, 2014, eBay has been on notice that . . . Carson

9

was the owner of the 729 patent . . . ."); *id.* at 16 ("Since at least February 7, 2014, eBay has been on notice that . . . Carson was the owner of the 601 patent."); Def. Mem. at 5-6 & n.3.) Moreover, even absent defendant's NOCI procedures, the filing of a federal complaint identifying the patents-in-suit satisfies the requirement that a plaintiff plead a defendant's knowledge of the patents-in-suit. *See Smartwater, Ltd. v. Applied DNA Scis., Inc.*, No. 12-CV-5731, 2013 WL 5440599, at *8 (E.D.N.Y. Sept. 27, 2013) (recognizing that a defendant's knowledge of the patents prior to the filing of a federal complaint is "not essential to a claim of induced infringement"); *see also SoftView L.L.C. v. Apple Inc.*, No. 10-CV-389, 2012 WL 3061027, at *7 (D. Del. July 26, 2012) ("[T]he filing of a complaint is sufficient to provide knowledge of the patents-in-suit for purposes of stating a claim for indirect infringement occurring after the filing date."); *MyMedicalRecords, Inc. v. Jardogs, LLC*, 1 F. Supp. 3d 1020, 1022 (C.D. Cal. 2014) ("[A] plaintiff may establish a defendant's knowledge of the patents-in-suit based on the filing of a previous complaint.").

B.   *Allegations of Underlying Direct Infringement*

Neither does defendant dispute that plaintiff has adequately alleged underlying direct infringement by non-party eBay merchants of the two relevant patents, as required to state

10

a claim for inducing infringement. *See Bill of Lading*, 681 F.3d at 1336 ("To state a claim for indirect infringement . . . a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." (emphasis in original)); *Paone v. Broadcom Corp.*, No. 15-CV-596, 2015 WL 4988279, at *13 (E.D.N.Y. Aug. 19, 2015) ("As an initial matter, plaintiff's indirect infringement claims require an allegation that an underlying act of direct infringement took place. Plaintiff's allegations that the 'end users' of defendants' accused products infringe the '789 patent are sufficient."). Here, plaintiff's provision in the Amended Complaint of a list of allegedly infringing items available for sale on defendant's website is sufficient to establish the direct infringement by eBay merchants necessary for plaintiff's induced infringement claims against defendant to survive a motion to dismiss. (Compl. at 8-13, 17-21.)

Defendant primarily argues that plaintiff has insufficiently pled: (1) that defendant knew the induced acts were infringing and (2) that defendant possessed specific intent to encourage another's infringement. The court addresses these arguments in turn.

11

C.   _Allegations of Defendant's Knowledge That the Induced Acts Constituted Infringement_

To state a claim for inducing infringement, plaintiff must plausibly allege that the defendant knew that the induced acts were infringing. _See Commil_, 135 S. Ct. at 1928. The knowledge requirement can be met by either (1) actual knowledge or (2) willful blindness. _See Global-Tech_, 563 U.S. at 766. Plaintiff alleges that defendant actually knew that the induced acts were infringing or, alternatively, that defendant was willfully blind. (Compl. at 7.) Defendant contends that plaintiff's complaint is inadequate under either theory. The court first addresses plaintiff's allegation of defendant's actual knowledge of allegedly infringing acts by merchants and then turns to plaintiff's alternative allegation regarding defendant's willful blindness.

i.   **Actual Knowledge**

Defendant first argues insufficient facts were pled to state a claim that defendant had actual knowledge that the induced acts constituted infringement. The court agrees.

Plaintiff's generalized allegation that defendant actually knew that the induced acts constituted infringement is fundamentally flawed because it is inconsistent with the specific factual allegations supporting plaintiff's contention that

12

defendant was willfully blind. Plaintiff alleges that defendant had actual knowledge (*e.g.*, *id.*) but simultaneously alleges with a notable degree of specificity that defendant "*explicitly refused to evaluate the issues of patent infringement presented*" by plaintiff. (*Id.* (emphasis added); *see also id.* at 15 (allegation that defendant "[k]nowingly refus[ed] to even evaluate whether the listings or infringing products are inappropriate under its own published policies"); *id.* at 23-24 (same).) Although a defendant is permitted to plead alternative theories of liability, "[w]here plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *See U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, No. 12-CV-4873, 2012 WL 6136017, at *7 (S.D.N.Y. Dec. 11, 2012) (internal quotation marks and citation omitted); *Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *8 (E.D.N.Y. Sept. 7, 2013) ("Where an allegation in the complaint conflicts with other allegations, or where the plaintiff's own pleadings are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint, the court is neither obligated to reconcile the pleadings with the other matter nor accept the allegation in the pleadings as true in

13

deciding a motion to dismiss." (internal quotation marks and citation omitted)), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015). Further, specific allegations that directly contradict general allegations will generally control. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal of a complaint where "attenuated allegations" supporting claim were "contradicted . . . by more specific allegations in the complaint").

Any generalized allegation that defendant had actual knowledge that the induced acts constituted infringement is undercut by plaintiff's far more specific allegation that defendant explicitly refused to evaluate plaintiff's claims of patent infringement by merchants selling products on eBay. Accordingly, plaintiff has inadequately pled that defendant had actual knowledge that the induced acts constituted infringement.

### ii. Willful Blindness

On the other hand, plaintiff's induced infringement claims may still survive if plaintiff can adequately plead that defendant was willfully blind. *See Global-Tech*, 563 U.S. at 768 ("Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent

14

infringement under 35 U.S.C. § 271(b).”). As noted above, willful blindness requires that the "alleged inducer (1) subjectively believe that there is a high probability that a fact exists and (2) take deliberate actions to avoid learning of that fact." *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1373 (Fed. Cir. 2015) (citing *Global-Tech*, 563 U.S. at 769). Here, plaintiff has adequately pled that defendant was willfully blind.

   (a) <u>Subjective Belief of a High Probability a Fact Exists</u>

   As to the first requirement, accepting the allegations in the complaint as true, plaintiff has sufficiently alleged that defendant subjectively believed there was a high probability of infringement, at least by the time the complaint in this action was filed. The complaint attached as exhibits the patents themselves (Compl., Exs. A-B) and provided detailed illustrations and photographs of both the patented inventions and certain allegedly infringing items. (*Id.*, Exs. A-C; *see also id.* at 9-10, 12, 18-19, 21.) The complaint also provided thorough descriptions of both patents (*id.* at 2-3, 8, 11, 16, 19-20) and a long list of the allegedly infringing products. (*Id.* at 8-10, 17-18). The complaint also alleged that, before filing the complaint, plaintiff followed defendant's procedures for providing notice of allegedly infringing products and engaged in more informal

15

communication with defendant regarding the allegedly infringing products. (*Id.* at 7-8, 16.)

At the pleading stage, the court concludes that the above-described allegations regarding subjective knowledge of a high probability of infringement are sufficient. In *Alibaba.com Hong Kong L.T.D. v. P.S. Products, Inc.*, No. 10-CV-4457, 2012 WL 1668896, at *3-4 (N.D. Cal. May 11, 2012), the court denied summary judgment to an online marketplace similar to defendant called Alibaba[4] on induced infringement claims where disputed issues of fact existed. In *Alibaba*, the plaintiff was the inventor and owner of design patents related to stun guns. *Id.* at *1. The plaintiff discovered allegedly infringing stun guns for sale on Alibaba's website. *Id.* at *2. The plaintiff sent Alibaba a letter advising that the stun guns on Alibaba's website infringed its patents and included copies of the patents in the letter. *Id.* at *2. The record did not reveal when the allegedly infringing products were removed from Alibaba's website. *Id.* The plaintiff subsequently noticed 29 additional infringing products on the website, but did not give

---

[4] *See* Michael L. Rustad et. al., *Destined to Collide? Social Media Contracts in the U.S. and China*, 37 U. Pa. J. Int'l L. 647, 671 (2015) (referring to Alibaba as "China's eBay equivalent"); *see also* Esther A. Zuccaro, Gucci v. Alibaba: A *Balanced Approach to Secondary Liability for E-Commerce Platforms*, 17 N.C.J.L. & Tech. On. 144, 149 (2016) ("Alibaba offers services on its platforms conceptualized as a mix of eBay's user-generated listings and Amazon's wide product availability . . . ." (citations omitted)).

Alibaba notice of those products until filing suit. *Id.* Alibaba took down the additional 29 products two days after the action was filed. *Id.*

The plaintiff brought direct infringement and induced infringement claims against Alibaba. *Id.* at *1, 3-4. The court held that the plaintiff's induced infringement claims could survive summary judgment because

> [t]here is a genuine factual dispute as to whether Alibaba took deliberate actions to avoid learning of infringement. The record shows that [plaintiff] sent Alibaba a notice of infringement in January 2010. It is unclear when Alibaba took down those allegedly infringing items. Construing the facts in a light favorable to [plaintiff], a reasonable jury could find that Alibaba induced infringement by deliberately maintaining the allegedly infringing item on its website for an unduly long period.

*Id.* at *3.[5]

The facts alleged in the complaint here are similar to the facts in *Alibaba*. Like the *Alibaba* plaintiff, the plaintiff here notified the online marketplace defendant eBay in its complaint in this action that its website offered specific items that infringed its patents. (*Compare Alibaba*, 2012 WL 1668896, at *2, *with* Compl. at 7-8, 16.) In *Alibaba*, as here, the plaintiff

---

[5] The *Alibaba* court also refused to grant summary judgment against the plaintiff's direct inducement claims because there was "a factual dispute as to whether a reasonable buyer" on defendant's website would have believe that the defendant itself "was making an offer to sell the allegedly infringing products." 2012 WL 1668896, at *3.

provided copies of the patent to the defendant. (*Compare Alibaba*, 2012 WL 1668896, at *2, *with* Compl., Exs. A–B *and* Def. Mem. at 9–10 & n.6.) Finally, whereas in *Alibaba* there was a factual dispute regarding when certain allegedly infringing items were removed from the website by Alibaba (*see Alibaba*, 2012 WL 1668896, at *3), the defendant here appears to admit that it did not remove the allegedly infringing items. (*See* Compl. at 15, 23 (alleging that defendant refused to remove infringing products); *see also* Def. Mem. at 7 ("eBay was not in a position . . . to remove th[e] listings.").)[6]

Defendant first argues that because it never takes possession of any of the approximately 800 million items offered on eBay, including the accused items, and because defendant is not skilled in the relevant art, defendant "has no basis to form a subjective belief of any sort about the likelihood of the infringing nature of the accused products." (Def. Mem. at 18-19.) If accepted, defendant's argument that possession of an allegedly infringing item is necessary for indirect infringement liability to attach would effectively render defendant immune from liability

---

[6] The *Alibaba* court did not explicitly address whether the online marketplace defendant subjectively believed that there was a high probability of infringement based solely on allegations that the plaintiff sent the defendant a letter alleging infringement and included copies of the patent in the letter. *Id.* at *2-3. Instead, the *Alibaba* court found a genuine factual dispute as to whether Alibaba took deliberate acts to avoid learning of infringement. *Id.*

for induced infringement merely because it never takes possession of *any* of the products available on its website. The court is reluctant to adopt such an application of § 271(b). *See* 5-17 Donald S. Chisum, *Chisum On Patents* § 17.04[4] (2016) ("The Section 271(b) prohibition on active inducement of infringement covers a wide variety of acts."); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (collecting cases demonstrating the very broad range of activities that can lead to liability for inducing patent infringement).

    Defendant next contends that it is not a person of ordinary skill in the relevant art. The court recognizes that in certain circumstances, where the "technology is simple and easily understandable, the level of ordinary skill in the art [can be] that of an ordinary layman of average intelligence." *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 992 (Fed. Cir. 2009) (internal quotation marks and citation omitted); *see also Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984) ("[A]ppellant's invention [is] easily understandable without the need for expert explanatory testimony.").[7] Defendant's contentions regarding its lack of

---

[7] In the distinct design patent context, the Federal Circuit has permitted courts evaluating infringement allegations to employ a side-by-side analysis between a plaintiff's patent and photographs of the defendant's allegedly

ordinary skill and its own inability to compare the plaintiff's protected patents against the allegedly infringing items on its eBay website raise issues beyond the scope of the pleadings.

Here, plaintiff initially notified defendant of its patents and its "belief" that vendors in the eBay marketplace offered infringing products when it submitted NOCI forms under eBay's VeRO program. The letters are dated December 30, 2013 and May 19, 2015. (ECF No. 17, Exs. 2-3.) Plaintiff also notified defendant of the alleged infringement (and provided copies of the patents) by serving its complaints in this action. Thus, the court finds that plaintiff has sufficiently alleged that defendant subjectively believed there was a high probability that plaintiff's patents were infringed by the items listed on defendant's online marketplace. *See Ill. Tool Works, Inc. v. MOC Prods. Co.*, 856 F. Supp. 2d 1156, 1168 (S.D. Cal. 2012) ("Had [plaintiff] indicated to [defendant] at any point that it believed [defendant's] product infringed the '638 Patent, this would suggest that [defendant] — at a minimum — 'subjectively believe[d]

---

infringing design. *See Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 (Fed. Cir. 2014) ("We also find no error in the court's consideration of the photographs of the accused . . . products. . . . Determining infringement of a design patent requires comparing the drawings of the patented design to the appearance of the accused products, and the photographs are visual representations of those products.").

that there [wa]s a high probability' that its product was infringing." (quoting *Global-Tech*, 563 U.S. at 769)).

(b) Deliberate Actions to Avoid Learning of a Fact

As to the second requirement for willful blindness — deliberate actions taken to avoid learning of a fact — plaintiff has alleged that defendant actively refused (despite plaintiff's requests) adequately to evaluate plaintiff's complaints of patent infringement. According to the complaint, defendant publicly proclaims that it does not "allow replicas, counterfeit items, or unauthorized copies to be listed" and ensures through its VeRO program that "intellectual property owners can easily report listings that infringe their rights." (Compl. at 6.) Plaintiff alleges, however, that defendant:

- "has explicitly stated that it will not even evaluate the issues of patent infringement presented by [plaintiff]" (Compl. at 7);

- "[k]nowingly refus[ed] to even evaluate whether the listings of infringing products are inappropriate under its own published policies . . ." (*id.* at 15, 23-24); and

- "[k]nowingly refus[ed] to even evaluate [plaintiff's] notices and complaints of patent infringement." (*Id.* at 15, 23-24.)

Ignoring accusations of patent infringement after affirmatively vowing to look into such allegations can suggest willful infringement. *See Info-Hold*, 783 F.3d at 1373 (finding allegation

21

that defendant's unfulfilled promise to "look again" at a patent after plaintiff raised questions about the possibility of infringement sufficient to raise an issue of material fact regarding willful blindness); *see also Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, No. 15-CV-1030, 2016 WL 1055827, at *7 (E.D. Tex. Mar. 17, 2016) ("Taking all inferences in [plaintiff's] favor, it has pleaded that the defendant took an affirmative action to avoid gaining knowledge of the patents in suit — ignoring all patents as a matter of policy."). Here, plaintiff complains not that defendant promised to investigate allegations of patent infringement, but, instead, that defendant has refused to evaluate reports of infringement under defendant's VeRO program.

Further, plaintiff alleges that even after notifying defendant that infringing products were available for sale on its website, defendant "[k]nowingly refus[ed] to remove or cancel listings of infringing products . . . thereby . . . encouraging, aiding, abetting and/or inducing infringing sales." (Compl. at 15; *see also id.* (alleging that defendant refused to "suspend" or "remove" the infringing vendors' "selling privileges").) In a nearly factually analogous setting, the *Alibaba* court determined that notices of infringement sent to an online marketplace defendant, coupled with a lack of clarity about when the online

marketplace "took down th[e] allegedly infringing items," could lead a reasonable jury to find that the defendant induced infringement by "deliberately maintaining the allegedly infringing item on its website for an unduly long period." 2012 WL 1668896, at *3. Here, plaintiff appears to allege, and defendant does not dispute, that defendant *never* took down the allegedly infringing listings. (Compl. at 15, 23.) Accordingly, the court finds that plaintiff has plausibly pled that defendant was willfully blind.

Before turning to the adequacy of plaintiff's allegations regarding specific intent, however, the court must resolve a significant question raised by the parties: whether defendant's failure to obtain the advice of counsel is relevant to whether defendant had the requisite knowledge for liability under § 271(b).

### iii. Advice of Counsel

The parties dispute the applicability of 35 U.S.C. § 298 to the instant proceedings. Section 298 provides that

> [t]he failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent.

The provision, if applicable, would therefore preclude plaintiff from arguing that defendant's failure to obtain the advice of counsel is germane to whether defendant induced infringement. The parties' dispute is not about the substantive language of § 298, but instead concerns whether the recently enacted provision is even applicable to the instant action. A brief legislative history regarding the passage and subsequent amendment of § 298 resolves the dispute.

Before § 298 was enacted, evidence regarding a defendant's failure to obtain counsel regarding asserted patents was admissible at trial. *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) ("Because opinion-of-counsel evidence, along with other factors, may reflect whether the accused infringer 'knew or should have known' that its actions would cause another to directly infringe, we hold that such evidence remains relevant to the second prong of the intent analysis [for inducing infringement]."). When the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) (the "AIA"), was passed, however, one of its provisions (Section 17, which became § 298), legislatively abrogated the Federal Circuit's *Broadcom* decision in order "to protect attorney-client privilege and to reduce pressure on accused infringers to obtain opinions of counsel for litigation

24

purposes." H.R. Rep. No. 112-98, at 53 (2011) ("Section 298 applies to findings of both willfulness and intent to induce infringement – and thus legislatively abrogates the Federal Circuit's decision in *Broadcom Corp. v. Qualcomm Inc.*").[8]

When Congress passed the AIA, § 298 lacked a specific effective date. Its effective date was therefore governed by the AIA's default effective date, which specified that provisions in the AIA without explicit effective dates would "take effect upon the expiration of the 1-year period beginning on the date of the enactment of this Act and shall apply to any patent issued on or after that effective date." *See* AIA, § 35. Because the AIA passed on September 16, 2011 (and became effective one year later, on September 16, 2012), § 298 applied on a patent-by-patent (rather than action-by-action) basis only to patents issued on or after September 16, 2012.

Courts accordingly refused to apply § 298 where the patents-in-suit were issued before September 16, 2012. *See Suprema, Inc. v. Int'l Trade Comm'n*, 626 F. App'x 273, 282 (Fed. Cir. 2015) ("Because the AIA only applies to patents issued on or

---

[8] Then-Senator John Kyl stated during a hearing that permitting "adverse inferences from a failure to procure an opinion or waive privilege . . . feeds the cottage industry of providing such opinions – an industry that is founded on an unhealthy relationship between clients and counsel and which amounts to a deadweight loss to the patent system." 157 Cong. Rec. S1374 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl).

after September 16, 2012, and the '344 and '562 patents issued in 2007, [§ 298] does not control here."). Because a single action might involve multiple patents, as the instant action does, commentators recognized that § 298 could generate complex litigation problems. *See* Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. B. J. 539, 590 (2012) ("[U]nless this matter is remedied in subsequent legislation, the applicability of § 298 of title 35 will depend not on when the lawsuit in which § 298 is sought to be applied was filed, but rather on when the patent in suit was issued."); Edward D. Manzo, *America Invents Act: A Guide to Patent Litigation and Patent Procedure* § 10:4 (2015) ("As originally enacted, AIA § 35 made AIA § 17 applicable to all patents granted on or after September 16, 2012 (and inapplicable to patents granted before then). It makes more sense for § 17 to apply to all *civil actions* filed on or after September 16, 2012. Placing restrictions on the failure to obtain or present the advice of counsel on a per patent basis introduces new complexities in patent litigation, where a number of patents are often alleged to be infringed in any given case." (emphasis in original)).

In response to various concerns about the AIA including the apprehensions discussed above regarding the effective date of

§ 298, *see Novartis AG v. Lee*, 740 F.3d 593, 599-600 (Fed. Cir. 2014) (discussing an unrelated drafting error in the AIA), Congress ultimately passed a technical corrections bill: Leahy-Smith America Invents Technical Corrections, Pub. L. No. 112-274, 126 Stat. 2456 (2013). The new law, enacted on January 14, 2013, explicitly addressed the application of § 298: "[n]otwithstanding section 35 of the [AIA], section 298 of title 35, United States Code, *shall apply to any civil action commenced on or after the date of the enactment of this Act*." Pub. L. No. 112-274, § 1(a) (emphasis added); *see also id.* § 1(n) ("Except as otherwise provided in this Act, the amendments made by this Act shall take effect on the date of enactment of this Act, and shall apply to proceedings commenced on or after such date of enactment."). The technical corrections explicitly overrode the prior effective date of § 298 under the AIA, and require that § 298 be applied to all civil actions commenced on or after January 14, 2013 regardless of when the patents-in-suit were issued.[9] *See Carnegie Mellon Univ.*

---

[9] The view that the amendments overrode the prior effective date of § 298 is further underscored by the very limited legislative history regarding § 298. For example, Representative John Conyers explained that H.R. 6621, 112th Cong. (2011-2012), which in relevant part mirrors the final Leahy-Smith America Invents Technical Corrections, "clarifies that the Advice of Counsel section applies to civil actions commenced on or after the date of this legislation's enactment." 158 Cong. Rec. H6843 (daily ed. Dec. 18, 2012) (statement of Rep. Conyers). Rep. Conyers noted that the amendment addressing § 298 was intended to simplify problems that arose regarding the provision's effective date in the AIA. *Id.* Further, the Congressional Research Service summary of the bill explained that it "[a]pplies, to any civil action commenced on or after

*v. Marvell Tech. Grp., Ltd.*, No. 09-CV-290, 2013 WL 4511293, at *5 n.13 (W.D. Pa. Aug. 23, 2013) (holding that § 298 "applies to any law suit commenced on or after January 14, 2013 without regard to the issue date of the asserted patent").

Accordingly, because this is a "civil action[] commenced on or after" January 14, 2013, § 298 is applicable and plaintiff may not rely on defendant's failure to obtain a legal opinion regarding infringement to establish inducement, notwithstanding that the patents-in-suit were issued in 2000 (the '729 patent) and 2001 (the '601 patent). (Compl., Exs. A-B.) Plaintiff's reliance on *Suprema* (Pl. Opp'n at 13-14 & n.2) for the proposition that § 298 is inapplicable here is misplaced. As noted above, *Suprema* declined to apply § 298 to patents issued in 2007 because "the AIA only applies to patents issued on or after September 16, 2012." 626 F. App'x at 282 n.2. First, although *Suprema* post-dated the amendments to the AIA, *Suprema* addressed an International Trade Commission proceeding that was commenced *before* January 14, 2013. *See id.* at 276; *see also Certain Biometric Scanning Devices, Components Thereof, Associated Software, & Products Containing the*

---

enactment of this Act, the AIA's bar on using an accused infringer's failure to obtain the advice of counsel to prove that any infringement was willful or induced. (Currently, the bar would not take effect until one year after the AIA's enactment.)." Congressional Research Service, Summary of Public Law 112-274 (2013).

*Same*, Inv. No. 337-TA-730, USITC Pub. No. 4366 (June 17, 2011), 2011 WL 8883645, at *1 ("The Commission instituted this investigation on June 17, 2010 . . . .")).

Second, an International Trade Commission proceeding is not a "civil action" within the meaning of Pub. L. No. 112-274, § 1(a). *See SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 371 (Fed. Cir. 1983) ("We believe [the term] 'civil action' . . . does not embrace the proceedings before the [International Trade] Commission."); *see also* 28 U.S.C. § 1659 (distinguishing between civil actions and proceedings before the International Trade Commission, and permitting stay of civil action in favor of overlapping ITC proceedings in certain circumstances).[10] Finally, *Suprema* was unpublished and therefore non-precedential. *See Symbol Techs., Inc. v. Lemelson Med.*, 277 F.3d 1361, 1366-68 (Fed. Cir. 2002) (declining even to consider two prior unpublished, nonprecedential Federal Circuit opinions over argument that the two opinions were binding authority); Fed.

---

[10] It is not clear whether § 298 applies to ITC proceedings. For example, § 298 describes the consequences of a failure to present advice of counsel to "the court or jury" (there are no juries in ITC proceedings) and Pub. L. No. 112-274's provision that § 298 "shall apply to any civil action commenced on or after the date of the enactment of this Act" could be read to indicate that § 298 only applies to civil actions (and therefore not to ITC proceedings, *see SSIH Equip.*, 718 F.2d at 371).

Cir. R. 32.1(d) ("The court . . . will not give one of its own nonprecedential dispositions the effect of binding precedent.").

Accordingly, the court finds that § 298 applies to the instant action and plaintiff may not rely on defendant's failure to seek the advice of counsel to establish infringement.[11]

D.    *Allegations of Specific Intent*

The court turns next to the final pleading requirement under § 271(b), a plausible allegation that the defendant specifically intended to encourage another's infringement. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part) (recognizing that intent can be established by circumstantial evidence); *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989) ("Intent need not, and rarely can, be proven by direct evidence.") "Evidence of active steps . . . taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged

---

[11] To the extent, however, that defendant may rely on the advice of counsel to establish that it did not induce infringement, at least one court has held that § 298's protections would not apply. *See Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-CV-346, 2014 WL 4976596, at *2 (W.D. Wis. Oct. 3, 2014) (finding that § 298's protection "dissolves in the event defendant[] 'open[s] the door' by attempting to refute a claim of willful infringement by implying that they relied on the advice of counsel").

overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use . . . ." *Grokster*, 545 U.S. at 936 (internal quotation marks and citations omitted).

Here, assuming the truth of the allegations in plaintiff's complaint, the complaint has adequately alleged defendant's specific intent to infringe. As discussed above, the complaint provides defendant with highly detailed descriptions and depictions of the patents-in-suit and also the allegedly infringing items. (Compl. at 2-3, 8-12, 16, 18-21; *see also id.*, Exs. A-C.) Further, the complaint alleges that defendant, despite receiving notice of the alleged infringement (*id.* at 7-8, 16), nevertheless continued (and apparently continues) to sell infringing items. (*Id.* at 8, 15-16, 23.) At this early stage of the litigation, the above-described allegations are sufficient to sustain plaintiff's claims. *See Alibaba*, 2012 WL 1668896, at *3 (denying motion for summary judgment on induced infringement claim where online marketplace defendant merely received letter from plaintiff alleging infringement (along with copies of the patents) and fact issues remained regarding when defendant removed allegedly infringing listings); *see also Paone*, 2015 WL 4988279, at *13 ("Plaintiff's allegations that defendants knew of the

31

existence of the '789 patent and continued to sell a product that infringed it are sufficient to meet the intent requirement at the pleading stage." (citing *Conair Corp. v. Jarden Corp.*, No. 13-CV-6702, 2014 WL 3955172, at *3 (S.D.N.Y. Aug. 12, 2014)); *see also Conair*, 2014 WL 3955172, at *3 (finding sufficient to survive motion to dismiss plaintiff's allegation that defendant "did not stop manufacturing, importing, offering to sell, [or] selling" its machines after plaintiff notified defendant of its patent and indicated the specific infringing model numbers).

Defendant does not discuss *Alibaba*, but argues that *Paone* and *Conair* are inapplicable for two reasons. First, defendant argues that *Paone* and *Conair* improperly rely on *Global-Tech* rather than *Commil*. (Def. Reply at 3-4.) The standard for inducing infringement articulated by both cases, however, is the same. Indeed, the *Commil* Court explicitly confirmed that it was merely "reaffirm[ing] what the Court held in *Global-Tech*." *Commil*, 135 S. Ct. at 1926-28 ("[T]he *Global-Tech* rationale is sound."). Both cases hold that liability for inducing infringement requires knowledge of the patent and knowledge that the induced acts amount to patent infringement. *Compare Commil*, 135 S. Ct. at 1926 ("[L]iability for induced infringement can only attach if the defendant knew of the patent and knew as well that the induced

acts constitute patent infringement." (internal quotation marks and citation omitted)), *with Global-Tech*, 563 U.S. at 766 (holding that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement").

Second, defendant argues that the defendants in *Paone* and *Conair* (and similar cases cited by plaintiff) "all made and sold products that were allegedly used or combined in a directly infringing manner" and therefore "had knowledge of how their accused products, systems, or methods worked and were made." (Def. Reply at 4.) By contrast, defendant "does not make, use, sell, or even take possession of the accused products." (*Id.*) Defendant cites no precedent holding that making, using, or selling products accused of infringement is a requirement for indirect infringement. Making, using, or selling infringing products, in fact, would lead to liability for *direct* infringement. *See* § 271(a) ("[W]hoever without authority *makes*, *uses*, offers to sell, or *sells* any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." (emphasis added)). As for defendant's argument regarding possession, defendant cites no authority (and the court can find none) establishing that

33

possession of an allegedly infringing product is a prerequisite to liability for inducing infringement.

E.    _Defendant's Further Objections_

Defendant objects that it is practically impossible for it to police patent infringement, given the 800 million items available on its website at any given time. (Def. Reply at 7.) Defendant argues that "[p]roof of judicially-ordered injunctive relief or adjudication of patent infringement against a listed product is necessary because, otherwise, eBay would be forced into the untenable position of having to adjudicate patent infringement claims in the abstract against countless products." (Def. Mem. at 5.) Defendant further points to the Second Circuit's decision in _Tiffany (NJ) Inc. v. eBay Inc._, 600 F.3d 93, 103, 109, 112 (2d Cir. 2010) (_inter alia_, upholding bench trial verdict in favor of eBay on claims of direct trademark infringement, contributory trademark infringement, and trademark dilution), as an "example of a court's seal of approval on eBay's good faith efforts to combat intellectual property infringement of all types." (Def. Mem. at 24.)

The court recognizes defendant's legitimate concerns. At this stage of the proceedings, however, and granting all reasonable inferences in plaintiff's favor, the court is satisfied that

plaintiff has pled sufficient facts to survive a motion to dismiss. *See Bill of Lading*, 681 F.3d at 1339 ("To survive Appellees' motion to dismiss, therefore, [the plaintiff-appellant's] amended complaints must contain facts plausibly showing that Appellees specifically intended their customers to infringe the '078 patent and knew that the customer's acts constituted infringement. This does not mean, however, that [the plaintiff-appellant] must prove its case at the pleading stage."); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (internal quotation marks and citation omitted)). Although the Second Circuit validated defendant's anti-fraud procedures in the context of trademark infringement in *Tiffany*, the court did so only after a week-long bench trial in which the parties presented evidence of the nature of the trademark infringement allegations as well as defendant's anti-counterfeiting measures. *See Tiffany*, 600 F.3d at 96-101.

Further, in the only factually analogous case — which, inexplicably, neither party cites or discusses — the *Alibaba* court refused to grant summary judgment to online marketplace Alibaba on either the plaintiff-patentee's direct or induced infringement

allegations. *See Alibaba*, 2012 WL 1668896, at *3-4. The court concludes that plaintiff's induced infringement allegations regarding the '729 patent and the '601 patent are sufficient to survive defendant's motion to dismiss.

## II.  *Unfair Competition Claim*

Plaintiff additionally brings an unfair competition claim[12] premised on "two separate sets of factual allegations." (Pl. Opp'n at 18; *see also* Compl. at 25-26.) First, plaintiff alleges that defendant is "liable for unfair competition due to their bad faith infringement in competition with [plaintiff's] competing product." (Pl. Opp'n at 18.) Second, plaintiff alleges that defendant is "liable for unfair competition because of their unfair promulgation and non-adherence to the VeRO program." (*Id.*) Defendant argues that all of "the alleged conduct is tied to alleged patent infringement, and is thus preempted by the Federal Patent Act." (Def. Mem. at 24-28; Def. Reply at 8-9.) Plaintiff responds that because unfair competition requires "additional elements above and beyond that required to show patent

---

[12] In the Amended Complaint, plaintiff styles the relevant count "UNFAIR AND DECEPTIVE TRADE PRACTICES." (Compl. at 25.) To the extent the Amended Complaint could have been read to allege a violation of N.Y. Gen. Bus. Law § 349, which governs deceptive trade practice claims in New York, plaintiff has abandoned that claim. In its opposition brief, plaintiff explains that it brings only an unfair competition claim under New York common law. (*See* Pl. Opp'n at 20 (characterizing claim as one for "unfair competition under the common law of New York").)

infringement, [the unfair competition claim] is not preempted." (Pl. Opp'n at 20.) Plaintiff also argues that its unfair competition claim is about "commercial immorality and unfair misappropriation of the good will of those who respect intellectual property, not patent infringement." (*Id.* at 23.)

Under the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, "state law that conflicts with federal law is without effect." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005). The only type of preemption at issue here is conflict preemption, which occurs when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979) (internal quotation marks and citation omitted). In the patent context, "[f]ederal patent law preempts a state law claim that 'offer[s] patent-like protection to intellectual property inconsistent with the federal scheme.'" *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 328 (E.D.N.Y. 2014) (quoting *Dow Chem. Co. v. Exxon Corp.,* 139 F.3d 1470, 1475 (Fed. Cir. 1998)).

"Federal Circuit law governs whether federal patent law preempts a state law claim." *Sorias v. Nat'l Cellular USA, Inc.*,

37

124 F. Supp. 3d 244, 261 (E.D.N.Y. 2015) (internal quotation marks and citation omitted). The preemption analysis focuses on the allegedly tortious conduct of the defendant. *See Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998), *overruled in part on other grounds by Midwest Ind. Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999). Under *Hunter*,

> [i]f a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. Conversely, if the conduct is not so protected or governed, then the remedy is not preempted. This approach, which considers whether a state law tort, 'as-applied,' conflicts with federal patent law, is consistent with that employed by the Supreme Court in cases involving preemption of state unfair competition law.

*Id.* at 1336. The federal patent law will not preempt a state law cause of action such as unfair competition if the state law claims: (1) "include additional elements not found in the federal patent law cause of action" and (2) "are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999).

Two recent patent cases in this district illustrate preemption principles in the context of New York unfair competition

38

and patent claims. In *Sorias*, 124 F. Supp. 3d at 262, the plaintiffs brought an unfair competition claim under New York law that certain defendants argued was preempted by federal patent law. *Id.* at 261-62. The plaintiffs in *Sorias* alleged, *inter alia*, that: defendants were aware of the plaintiffs' patent, defendants' purportedly infringing product was "exactly like" the plaintiffs' product, and defendants had willfully infringed the plaintiffs' product. *See id.* at 262. The court concluded that the plaintiffs' "claim of unfair competition is purely based on allegations of patent infringement or copying of an unpatented product" and was therefore "necessarily preempted by federal patent law." *Id.*

Similarly, in a case involving the same plaintiff litigating this action, a court found that federal patent law preempted a New York unfair competition law claim. *See Carson*, 11 F. Supp. 3d at 334-35. In *Carson*, the plaintiffs alleged that the defendants – a manufacturer and a retailer – had copied and distributed products infringing on their patents and other intellectual property. *Id.* at 324-26. The plaintiff alleged, *inter alia*, that the manufacturer and retailer had acted "in bad faith to misappropriate the skill, expenditures, and labor" of the plaintiff by "stealing [the plaintiff's] patented design features and distinctive trade dress and creating knock-off replicas of

[the plaintiff's] products"; that the manufacturer had "showed its customers samples of [the plaintiff's products] and simply used a computer to edit out the [plaintiff's] logo on the photos"; that the manufacturer would not have secured business for the retailer defendant "had it not misappropriated [the plaintiff's] skills, investments, and efforts in bad faith"; and that the retailer had encouraged such misappropriation in order to earn a higher profit on the goods it retailed for the manufacturer. *Id.* at 330. The court concluded that the allegations "fail[ed] to identify specifically the alleged wrongful conduct undertaken by defendants apart from patent infringement" and accordingly held that the unfair competition claims were preempted by federal patent law. *Id.*

   A.   *Plaintiff's Allegation Regarding Defendant's "Bad Faith and Willful Inducement of Infringement"*

   Here, plaintiff's first allegation regarding unfair competition is that defendant's "acts of unfair methods of competition and/or unfair or deceptive trade practices include the bad faith and willful inducement of infringement of the 729 and 601 Patents in such a manner as to directly and unfairly compete with [plaintiff's] business." (Compl. at 25.) As an initial matter, plaintiff's allegation is far less detailed than the comparatively fulsome allegations regarding unfair competition in *Carson*, which

40

were nevertheless held to be preempted by federal patent law. *See* 11 F. Supp. 3d. at 330. More fundamentally, plaintiff essentially contends that the alleged unfair method of competition *is* the inducement of infringement. (*See* Compl. at 25 (alleging that the "acts of unfair methods of competition . . . include the bad faith and willful inducement of infringement").) Plaintiff's allegations would equate proof of inducement of infringement with establishing that defendant is also liable for unfair competition. The unfair competition claim premised on "bad faith and willful inducement of infringement" is necessarily preempted by federal patent law.

Plaintiff appears to contend that its conclusory allegations regarding bad faith remove its claim from the reach of federal preemption. (Pl. Opp'n at 18, 20; *see also* Compl. at 25.) An identical argument was rejected in *Carson*. *See* 11 F. Supp. 3d at 331 ("Moreover, plaintiffs' allegations of defendants' bad faith premised on the unlawful copying, misappropriating, knocking off, and stealing of Carson's patented designs are insufficient to transform the nature of these claims from patent infringement to an independent common law claim of unfair competition."). This court, for the same reasons articulated by the court in *Carson*, finds plaintiff's conclusory allegation regarding bad faith insufficient to state an independent, sustainable claim of unfair

competition. *See id.; see also Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1332 n.5 (Fed. Cir. 2012) (affirming dismissal of unfair competition claim on federal preemption grounds where declaratory judgment plaintiff made only "bald assertions that [defendant] acted in 'bad faith'").

Finally, plaintiff's reliance on *Rodime*, 174 F.3d at 1306, is misplaced. In *Rodime*, the plaintiff brought, *inter alia*, an unfair competition claim based on the defendant's "alleged efforts to dissuade other disk drive companies from taking a license from [plaintiff]." *Id*. The defendant argued that the claim was preempted because it "implicate[d] the patent law cause of action of inducement to infringe." *Id*. The court rejected the defendant's argument, and held that, to prove the defendant was liable for unfair competition (under California law), the plaintiff needed to show that the defendant "engaged in an unfair business practice, that is, a business practice that is immoral, unethical, oppressive, unscrupulous, or substantially injurious," while inducement "required no such proof." *Id*. The allegations in *Rodime* concerned conduct materially different from the conduct at issue in the instant case. There, the plaintiff's allegation (that defendant had pressured other companies not to take a license from plaintiff) was not dependent — as are the claims here — on the

42

purported infringement. *See id.* (holding that federal patent law
will not preempt unfair competition if a plaintiff's claims
"include additional elements not found in the federal patent law
cause of action" *and if they are not* "*an impermissible attempt to
offer patent-like protection to subject matter addressed by
federal law*" (emphasis added)). Accordingly, plaintiff's first
theory of unfair competition liability fails to state a claim.

B. *Plaintiff's Allegation Regarding Defendant's VeRO
Program*

The thrust of plaintiff's second argument regarding
unfair competition is that defendant misrepresented the reach of
its intellectual property protection program VeRO. According to
plaintiff, defendant's website states: "We're committed to
protecting the intellectual property rights of third
parties . . . . We created [VeRO] so that intellectual property
owners can easily report listings that infringe their rights."
(Compl. 6; *see also id.* (allegation that defendant's website
states: "[w]e don't allow replicas, counterfeit items, or
unauthorized copies to be listed").)[13] According to the Amended

---

[13] Plaintiff also cites in its opposition brief statements from defendant's
website that were not included in the Amended Complaint, including, for example,
the statement: "If you have a good faith belief that an item or listing infringes
on your intellectual property rights, you can report the alleged infringement
to [defendant] by submitting a Notice of Claimed Infringement (NOCI) to eBay's
VeRO program." (Pl. Opp'n at 21.) The court declines to consider any purported
statements on defendant's website that were not described in the Amended

Complaint, defendant represents to the public that it "respects the intellectual property rights of others as long as such rights holders *give [defendant] notice* of the specific listings that infringe on their rights." (Compl. 25 (emphasis added).) Plaintiff argues, however, that a patentee seeking to file a VeRO report does not discover until a few clicks into the online reporting process that defendant "will not remove patent infringing listings without a court order." (Pl. Opp'n at 22; *see also* Am. Compl. at 25 ("In reality, [defendant] does not follow its own VeRO program, and instead claims that it does not have time to review the notices provided by intellectual property rights holders to determine whether [] listings infringe on such rights.").)

Even if plaintiff's claim arising out of defendant's non-adherence to its VeRO policy were not preempted, the court concludes that the complaint fails to state a claim for unfair competition under New York law. *See Khan ex rel. Haque v. Am. Airlines, Inc.*, No. 08-CV-5246, 2008 WL 5110852, at *6 (S.D.N.Y. Nov. 26, 2008) ("[E]ven if plaintiffs' claim of emotional distress due to breach of policy was not preempted by the [Americans with

---

Complaint on this motion to dismiss. *See In re UBS Auction Rate Sec. Litig.*, No. 08-CV-2967, 2010 WL 2541166, at *15 (S.D.N.Y. June 10, 2010) ("[T]he Court finds that it is inappropriate to take judicial notice of [a copy of an investment guide that was allegedly available on the defendants' website] . . . .").

Disabilities Act], we find that it fails because it is not a cognizable claim under New York law."). "Under New York law, the essence of an unfair competition claim is that 'the defendant has misappropriated the labors and expenditures of another' and has done so in bad faith." *Coca-Cola N. Am. v. Crawley Juice, Inc.*, No. 09-CV-3259, 2011 WL 1882845, at *6 (E.D.N.Y. May 17, 2011) (quoting *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir. 1980)). Although the "law of unfair competition in New York encompasses a broad range of unfair practices," *CA, Inc. v. Simple.com, Inc.*, 621 F. Supp. 2d 45, 52 (E.D.N.Y. 2009); *Roy Export Co. Establishment v. Columbia Broad. Sys. Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) ("New York courts have noted the incalculable variety of illegal practices falling within the unfair competition rubric, . . . calling it a 'broad and flexible doctrine' that depends 'more upon the facts set forth . . . than in most causes of action.'" (internal quotation marks and citations omitted)), the tort "is not all-encompassing." *Nationwide CATV Auditing Servs., Inc. v. Cablevision Sys. Corp.*, No. 12-CV-3648, 2013 WL 1911434, at *10 (E.D.N.Y. May 7, 2013) (internal quotation marks and citation omitted); *see also Carson*, 11 F. Supp. 3d at 329 (internal quotation marks and citation omitted) (same).

45

Recently, the New York Court of Appeals explained that it has "long recognized two theories of common-law unfair competition: palming off and misappropriation." *ITC Ltd. v. Punchgini, Inc.*, 880 N.E.2d 852, 858 (N.Y. 2007); *see also Sidney Frank Importing Co. v. Beam Inc.*, 998 F. Supp. 2d 193, 208 (S.D.N.Y. 2014) (same); *Johnson & Johnson v. Am. Nat'l Red Cross*, 552 F. Supp. 2d 434, 446 (S.D.N.Y. 2008) (same). Palming off, the *Punchgini* court explained, is the "sale of the goods of one manufacturer as those of another" and has been extended to circumstances where the relevant parties "are not even in competition." 880 N.E.2d at 858; *see also id.* at 858 & n.2 (providing, as archetypal example of palming off, a situation in which "defendant . . . substituted its product for plaintiff's when customers specifically asked for plaintiff's product"). The second theory, misappropriation, prevents individuals from "misappropriate[ing] the results of the skill, expenditures and labors of a competitor." *Id.* at 858 (internal quotation marks and citation omitted); *see also Maison Prunier v. Prunier's Rest. & Cafe, Inc.*, 288 N.Y.S. 529, 531 (N.Y. Sup. Ct. 1936) (finding defendant, a New York restaurant, liable under misappropriation theory for using a name associated with plaintiff's high-end European restaurants "because of plaintiff's well-known reputation

46

and good will which ha[d] been built up as the result of decades of honest business effort").

Plaintiff's theory that defendant is liable for unfair competition because of defendant's purported non-adherence to its own VeRO program (as advertised on one part of defendant's website) cannot be shoehorned into either of the two broad theories of unfair competition recognized by the New York Court of Appeals in *Punchgini*. First, the VeRO-related allegations do not state a claim for palming off. "Essentially, palming off occurs when A promotes A's products under B's name and its corollary, reverse palming off, occurs when A promotes B's products under A's name. *Marvullo v. Gruner & Jahr AG & Co.*, No. 98-CV-5000, 2001 WL 40772, at *7 (S.D.N.Y. Jan. 17, 2001) (internal quotation marks and citation omitted). Here, plaintiff does not allege that defendant is promoting defendant's products under plaintiff's name or that defendant is promoting plaintiff's products under defendant's name. Accordingly, the palming off theory is inapplicable to plaintiff's unfair competition claim. *See id.* (dismissing plaintiff photographer's palming off allegation on a motion to dismiss where the defendant magazine that published his photographs did not (1) represent its own photographs as the

47

plaintiff's or (2) represent itself as the creator or owner of the plaintiff's photographs).

Neither does plaintiff adequately plead that defendant "misappropriated the plaintiff's labors, skills, expenditures, or good will," *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 446 (E.D.N.Y. 2011) (internal quotation marks, citation, and alteration omitted), as would be necessary to state a claim under the misappropriation theory. In a traditional misappropriation case, a defendant explicitly misleads the public in some way about the identity of a product or service. *See Shaw v. Time-Life Records*, 341 N.E.2d 817, 820 (N.Y. 1975) ("The essence of an unfair competition claim is that the defendant assembled a product which bears so striking a resemblance to the plaintiff's product that the public will be confused as to the identity of the products.").

Even assuming, as the court must, that defendant, in advertising its VeRO program, "buried" the fact that it would only remove items from its website with a court or ITC order of infringement, such an allegation does not state a claim for unfair competition under the misappropriation theory. *See Simple.com, Inc.*, 621 F. Supp. 2d at 53 ("Not every act, even if taken in bad faith, constitutes unfair competition."). The alleged non-

48

adherence to the VeRO program does not involve any misappropriation of plaintiff's labors, skills, expenditures, or good will.

The inadequacy of plaintiff's claim is further underscored by the fact that plaintiff cites only a single case to support its theory, *Roy Export Co.*, 672 F.2d at 1105, which is plainly distinguishable. In *Roy*, the plaintiffs owned exclusive rights to certain Charlie Chaplin films. *Id.* at 1097 & n.3. The plaintiffs alleged, *inter alia*, that CBS was liable for unfair competition under the misappropriation theory after it aired, with only "minor editing," a compilation of Chaplin footage that the plaintiffs had created using their own protected films. *Id.* at 1098-99. CBS aired the footage despite repeated rebuffed attempts to license the material from plaintiffs, who intended to use the material to create their own retrospective on Chaplin. *Id.* at 1098. The Second Circuit upheld a verdict in favor of the plaintiffs on the unfair competition claim, concluding that CBS had "unquestionably appropriated the 'skill, expenditures and labor' of the plaintiffs to its own commercial advantage" and that CBS's actions, "in apparent violation of its own and the industry's guidelines, were arguably a form of 'commercial immorality.'" *Id.* at 1105. By contrast, there is no analogous misappropriation of skill, expenditures, or labor alleged in the Amended Complaint.

Plaintiff merely alleges that defendant does not abide by its own stated policy regarding intellectual property protection, which does not in any way involve siphoning off plaintiff's skill, expenditures, or labor. As already explained above, such an allegation does not state a claim for unfair competition.

Accordingly, the court concludes that plaintiff's unfair competition claims are preempted and, even if not preempted, fail to state a claim.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff has plausibly alleged that defendant induced infringement of the '729 patent and the '601 patent. Plaintiff has not, however, plausibly alleged an unfair competition claim. Plaintiff's unfair competition claim is therefore dismissed with prejudice.

**SO ORDERED.**

Dated:     August 17, 2016
           Brooklyn, New York

_____/s/_____
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York